[No. B078648. Second Dist., Div. Four. Mar. 24, 1995.]

In re MARVEN C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MARVEN C., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

## COUNSEL

Barbara Michel, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Tricia A. Bigelow and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

EPSTEIN, J.—Marven C. appeals from an order of the juvenile court declaring him a ward under Welfare and Institutions Code section 602, and committing him to the California Youth Authority for a period not to exceed

29 years to life. In the published portion of this opinion, we discuss his challenge to the jurisdictional finding of the juvenile court. Appellant argues there is insufficient evidence in the record to establish that he appreciated the wrongfulness of his conduct, as required by Penal Code section 26 when the minor is under the age of 14 at the time of the charged conduct. We find the adjudication is supported by substantial evidence.

In the unpublished portion of the opinion, we address appellant's additional arguments. He contends that the adjudication of count 1 of the petition must be treated as a finding of second degree murder because the juvenile court failed to specify the degree. We find the juvenile court's statement ambiguous, and remand for clarification on this issue. Appellant argues that the trial court abused its discretion in committing him to the California Youth Authority. We find no abuse of discretion. Finally, he argues that an improper enhancement was imposed for count 2 of the petition, discharge of a firearm. We concur, and remand the matter for a new disposition.

## FACTUAL AND PROCEDURAL SUMMARY

On June 18, 1992, Henry Tovar, Julio Garcia, Ivan Potter, Wilfredo Marroquin and a fifth youth identified only as Jorge drove to the Sherman Oaks Center for Enriched Studies to pick up Jorge's girlfriend Ruth. Ivan was driving Jorge's brown Subaru station wagon. While at the school, Ivan was confronted by three males in a blue Mustang. The front passenger asked Ivan where he was from. Ivan understood that as asking his gang affiliation. Ivan replied, "Nowhere." The passenger responded that he was from "STC," and pulled a gun from his stomach area. Ivan told him to be sure he killed him, because Ivan would retaliate. Ivan also challenged the passenger to a fistfight. At that point, the blue Mustang pulled away.

Ivan's group returned to the Subaru, and Ivan turned onto Erwin Avenue in front of the school. He was passed by the blue Mustang. When the Mustang was eight feet in front of the Subaru, the front passenger leaned far out of the window and fired toward the Subaru. None of the occupants of the Subaru was hit. With the Mustang in the lead, both cars turned into the next street, which turned out to be a dead end. Part way down the street, Ivan began to turn the Subaru, but had difficulty putting the car in reverse. At that point, the front passenger in the Mustang again leaned out the car window and fired a series of shots. Once again, all the occupants of the Subaru escaped injury.

Ivan drove out of the dead-end street back to Erwin, then turned into a driveway. The Mustang followed. Ivan and Julio got out of the car and

moved for cover. At that point, the front passenger of the Mustang leaned out of the window and fired a final shot. Wilfredo was shot, dying within the week. Henry, Julio, and Ivan identified appellant in court as the shooter. Henry was a former member of the 18th Street gang. Julio was a member of the same gang, but no longer lived in its territory.

The People presented evidence that earlier in the month of the shooting, appellant was dating Karen Mendez, who attended the Center for Enriched Studies. Karen was a member or associate of STC, the Street Criminals gang, as was appellant. One week before the shooting, Karen had a confrontation on a school bus with Juan Ayala. She threatened to bring her "homeboys" down.

Another student at the school, Alma Castro, told Los Angeles Police Officer Kevin Korne that she had seen the gunfire from the blue Mustang on June 18, 1992. She also had seen Karen and Karen's sister, Cynthia, in front of the school that day. Alma said she knew that Karen's boyfriend drove a blue car, believed the blue Mustang belonged to him, and believed Karen's boyfriend was picking Karen up at school on the day of the shooting.

Los Angeles Police Officer Juan Gomez qualified as a gang expert. He testified that the 18th Street and Street Criminal gangs had been in conflict since late 1991. Several months before the shooting, appellant told Officer Gomez that he was a member of the Street Criminals, and was known as "Lil' Cyco."

Appellant's defense was based on misidentification. Henry and Ivan each testified that the shooter had uniformly short hair with no pony tails on the day of the shooting. Appellant presented witnesses, including a detention officer at the Sylmar Juvenile Hall where he was detained after his arrest. The detention officer testified that appellant had two curly pony tails until she cut them off at the Sylmar facility. The two pony tails were introduced into evidence since appellant had asked that they be saved for his mother. An expert on eyewitness identification testified about the adverse impact of stress on the accuracy of eyewitness identification. Appellant claimed the shooting was committed in self-defense, or imperfect self-defense, arguing that Ivan had pursued the Mustang and that one of the youths in the Subaru had thrown a rock at the Mustang from the driveway where Wilfredo was shot.

A petition was filed under Welfare and Institutions Code section 602, alleging in count 1 that appellant murdered Wilfredo Marroquin (Pen. Code, § 187, subd. (a)), and in count 2 that he discharged a firearm at an occupied

vehicle (Pen. Code, § 246). The juvenile court sustained the petition on both counts and declared the minor a ward of the court. Appellant was committed to the Youth Authority for a period not to exceed 29 years to life. He filed a timely appeal from the jurisdictional and dispositional orders.

DISCUSSION

I

*Juvenile Court Jurisdiction*

"Penal Code section 26 articulates a presumption that a minor under the age of 14 is incapable of committing a crime. (Pen. Code, § 26, subd. One.) To defeat the presumption, the People must show by 'clear proof' that at the time the minor committed the charged act, he or she knew of its wrongfulness. This provision applies to proceedings under Welfare and Institutions Code section 602. [Citation.] Only those minors over the age of 14, who may be presumed to understand the wrongfulness of their acts, and those under 14 who—as demonstrated by their age, experience, conduct, and knowledge—clearly appreciate the wrongfulness of their conduct rightly may be made wards of the court in our juvenile justice system. [Citation.]" (*In re Manuel L.* (1994) 7 Cal.4th 229, 231-232 [27 Cal.Rptr.2d 2, 865 P.2d 718], fn. omitted.) The Supreme Court has construed the "clear proof" standard as requiring that "the People . . . prove by clear and convincing evidence that the minor appreciated the wrongfulness of the charged conduct at the time it was committed." (*Id.* at p. 232.) On appeal, we must determine whether substantial evidence supports the conclusion of the trier of fact. (*In re Paul C.* (1990) 221 Cal.App.3d 43, 52 [270 Cal.Rptr. 369].)

The record reflects some confusion as to appellant's age. The original petition alleged that he was born October 14, 1976, which would have made him 15 years old at the time of the shooting. During trial, the court took judicial notice of a birth certificate from Guatemala which stated that appellant was born October 2, 1978, a birthdate that would fix his age at 13 years at the time of the shooting. The trial court found that appellant comes with Penal Code section 26.

After both appellant and the People had rested, appellant's attorney moved to dismiss the petition for insufficiency of the evidence on the ground that the People had not met the requirements of Penal Code section 26. The trial court found: "[T]he facts do impute a knowledge of the wrongfulness of this act. [¶] . . . [¶] The manner in which this was conducted, the speed with which it was conducted, firing and departing the scene, all do impute a

knowledge of the wrongfulness of the act. [¶] Shooting at someone several times in a public place to kill them would not be something that even a two-year-old would think would be all right. [¶] A minor as street-smart as this individual has shown himself to be does leave him to the imputation of knowledge of the wrongfulness of his acts. And the court does so find." The motion to dismiss was denied.

The juvenile court "must consider the child's age, experience, and understanding. [Citation.] A minor's knowledge of his act's wrongfulness may be inferred from the circumstances, such as the method of its commission or its concealment. [Citation.]" (*In re Paul C., supra*, 221 Cal.App.3d at p. 52.)

■ We conclude there is substantial evidence to support the trial court's finding. The Guatemalan birth certificate was credited. It established that appellant was at least 13 years and 8 months old at the time of the shooting. " '[I]t is only reasonable to expect that generally the older a child gets and the closer [he] approaches the age of 14, the more likely it is that [he] appreciates the wrongfulness of his acts.' [Citations.]" (*In re Paul C., supra*, 221 Cal.App.3d at p. 53.)

The evidence established that appellant carried a concealed weapon to the school and displayed it to Ivan, pulling it from "his stomach." When a school security guard appeared, the blue Mustang departed. Thereafter, appellant fired shots at the occupants in the Subaru on three separate occasions as the cars drove in the area of school. Each time, appellant leaned far out of the car window to fire the gun. Prior to the shooting, appellant had identified himself to Officer Gomez as a member of the Street Criminals gang.

This evidence establishes the basis for a finding that appellant was within the jurisdiction of the juvenile court under Penal Code section 26 and *In re Manuel L., supra*, 7 Cal.4th at pages 231-232. This is not conduct which could possibly be interpreted as lawful. It was murder, in which appellant took three opportunities to fire at his intended victims. We are unpersuaded by appellant's reliance on the fact that he committed his crimes in public view of a school in heavy traffic in the middle of the afternoon. While it is true that evidence of concealment is a factor in meeting the requirements of Penal Code section 26 (see *In re Paul C., supra*, 221 Cal.App.3d at p. 53), we decline to infer an inability to understand the wrongfulness of conduct because the act was public.

Appellant also argues "The manner was a typical drive-by shooting." He asserts that "it is difficult to discern how the manner of this particular

drive-by demonstrated knowledge of wrongfulness." We are not so sanguine about this "typical" drive-by shooting. It was, in fact, a chase rather than a drive-by. The evidence amply supports the juvenile court's finding by clear and convincing evidence that appellant appreciated the wrongfulness of his conduct. He was properly adjudicated a ward within the provisions of Welfare and Institutions Code section 602.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The jurisdictional order is reversed and remanded for a finding of the degree of murder under count 1 of the petition. In all other respects, the jurisdictional adjudication is affirmed. The disposition is reversed, and the matter is remanded for recalculation of the maximum permissible time in custody in a manner consistent with the views expressed in this decision.

Woods (A. M.) P. J., and Vogel (C. S.), J., concurred.

Appellant's petition for review by the Supreme Court was denied June 21, 1995.

---

*See footnote, *ante*, page 482.