[No. E031974. Fourth Dist., Div. Two. June 12, 2003.]

In re JAMES B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JAMES B., Defendant and Appellant.

**COUNSEL**

Debra R. Torres-Reyes, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela A. Ratner Sobeck, David Delgado-Rucci and Jeffrey J. Koch, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—On May 1, 2002, James B. (minor), a 12 year old, was charged in a Welfare and Institutions Code section 602 second amended petition with assault with a deadly weapon (Pen. Code, § 245 subd. (a)(1); count 1), petty theft (Pen. Code, § 484, subd. (a); count 2), and second degree burglary (Pen. Code, § 459; count 3). At the jurisdictional hearing on May 22, 2002, counts 1 and 2 were dismissed and count 3 was found to be true.

On June 24, 2002, minor was declared a ward of the court and placed on probation in the custody of his grandmother. Further, the court found that the maximum period for physical confinement would be one year. A Penal Code section 17, subdivision (b) motion to reduce the conviction to a misdemeanor was granted.

Minor now appeals, contending that: (1) he did not violate Penal Code section 459 because the evidence showed the vehicle was not locked for the purpose of automobile burglary, (2) he did not know right from wrong, and (3) that the court erred in determining jurisdiction.

### FACTS

On April 30, 2002, Daniel Goehring (Goehring) parked his Chrysler PT Cruiser in the parking lot of Arrowhead Credit Union. Goehring locked the doors of the vehicle and opened the windows for ventilation. Although he usually opens the windows a couple of inches, the driver's window was open about one inch and the passenger window about three inches.

Mr. Ruben Morales was in the parking lot at an ATM machine. Mr. Morales saw minor close the door of Goehring's vehicle and walk away. He called the police after he saw minor return to the vehicle and open the door.

Deputy Sheriff Cory Emon (Emon) responded and arrested minor at the scene. The passenger window of Goehring's vehicle was down three to four inches, but Emon could not reach his hand through the opening. Minor told Emon, however, that he had reached through the window opening, unlocked

the door, and had taken a cell phone from the interior of the car. Minor also told Emon that he did not want to lie anymore. Emon asked minor where the cell phone was and minor took the deputy to a bush where minor retrieved the phone.

Emon asked minor whether he knew the difference between doing what is right and what is wrong. Minor said, "A little bit." When asked for an example of something that is right to do, minor said, "Being nice." In response to a request for an example of something that was wrong to do, minor answered, "Run from the police." Minor also told Emon that his parents punish him for doing something they have taught him is wrong.

LOCKED VEHICLE

Minor first contends that there is insufficient evidence to convict him of burglary, arguing that the vehicle was not locked within the meaning of Penal Code section 459. Because a window of the vehicle was partially open, minor claims that the vehicle should not be considered locked and that a burglary of an unlocked vehicle could not occur without a show of force. We disagree.

Section 459 of the Penal Code defines burglary to include entering a vehicle "when the doors are locked . . . with intent to commit grand or petit larceny . . . ." The element of "locked doors" has occasionally been a subject of appellate cases. (*People v. Allen* (2001) 86 Cal.App.4th 909 [103 Cal.Rptr.2d 626] [gaining access to a vehicle's trunk by opening an unlocked passenger door and lifting a trunk latch was not considered entering a locked vehicle]; *In re Young K.* (1996) 49 Cal.App.4th 861 [57 Cal.Rptr.2d 12] [entering headlamp housings of a vehicle to steal the headlamps is not a burglary, even if the vehicle is locked]; *In re Lamont R.* (1988) 200 Cal.App.3d 244 [245 Cal.Rptr. 870] [chains wrapped and hooked across a trailer door were not sufficient to consider the vehicle locked because they were simply unhooked without using force or breaking a seal]; *People v. Woods* (1980) 112 Cal.App.3d 226 [169 Cal.Rptr. 179] [reaching into a vehicle with a window open five and one-half inches and removing items was not a burglary even though the doors were locked]; *People v. Malcolm* (1975) 47 Cal.App.3d 217 [120 Cal.Rptr. 667] [entering a vehicle by opening a wind wing with a broken latch, reaching in and unlocking doors, was considered entering a locked vehicle]; *People v. Blalock* (1971) 20 Cal.App.3d 1078 [98 Cal.Rptr. 231] [forcible entry into a locked trunk was sufficient for burglary whether or not the passenger doors were locked]; *People v. Massie* (1966) 241 Cal.App.2d 812 [51 Cal.Rptr. 18] [a semitrailer was considered locked when the doors were secured by a metal clip that

required breaking a seal in order to open the door]; *People v. Toomes* (1957) 148 Cal.App.2d 465 [306 P.2d 953] [entering a locked trunk for the purpose of theft, when all other doors were also locked, satisfied the elements of burglary]; *People v. Burns* (1952) 114 Cal.App.2d 566 [250 P.2d 619] [even though window was broken, without testimony or other evidence that the vehicle had been locked, there cannot be a finding of burglary].)

The common law element of breaking has never been an essential element of statutory burglary in California. (*People v. Allen, supra,* 86 Cal.App.4th at p. 914.) Burglary from a vehicle is the lone exception, requiring that the doors of a vehicle be locked. (Pen. Code, § 459.) Yet, "neither forced entry in the usual sense of the word nor use of burglar tools are elements of automobile burglary." (*In re Charles G.* (1979) 95 Cal.App.3d 62, 67 [156 Cal.Rptr. 832].) The key element of auto burglary is that the doors be locked. In *In re Charles G.,* the court considered the vehicle locked based upon testimony that the owner's habit was to lock his car, even though there were no signs of forced entry. (*Id.* at pp. 65, 66-68.) In *Burns,* on the other hand, there was evidence of forced entry (broken glass), but no evidence that the car had been locked; therefore there was no burglary. (*People v. Burns, supra,* 114 Cal.App.2d at p. 570.)

The requirement of locking as an element of vehicular burglary has been interpreted to mean "that where a defendant 'used no pressure,' 'broke no seal,' *and* 'disengaged no mechanism that could reasonably be called a lock,' he is not guilty of auto burglary. [Citations.]" (*In re Young K., supra,* 49 Cal.App.4th at p. 864.) Therefore, "because auto burglary can be committed only by entering a *locked* vehicle without the owner's consent, it is only accomplished by altering the vehicle's physical condition; at worst, by smashing a window, at best, by illegally unlocking it. These extremes, as well as other possible types of forcible entries, necessarily involve unlawfully altering the vehicle's locked state." (*People v. Mooney* (1983) 145 Cal.App.3d 502, 505 [193 Cal.Rptr. 381].)

In considering the legislative intent underlying the "locked doors" element of auto burglary, the *Toomes* court found "the purpose of the statute [is] to make it a more serious offense to break into the interior of a car than to merely steal something from it." (*People v. Toomes, supra,* 148 Cal.App.2d at p. 467.) The state's policy has been to construe a penal statute as favorably to the defendant as its language and the circumstances reasonably permit. (*People v. Woods, supra,* 112 Cal.App.3d 226, 231 [169 Cal.Rptr. 179]; *People v. Malcolm, supra,* 47 Cal.App.3d 217, 222 [120 Cal.Rptr. 667]; see also *Keeler v. Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420], superseded by statute on another ground as

stated in *Wilson v. Kaiser Foundation Hospitals* (1983) 141 Cal.App.3d 891, 897, fn. 6 [190 Cal.Rptr. 649].) In other words, "[w]hen an accused is charged with an offense defined in terms subject to two reasonable constructions, the construction favorable to the defendant is ordinarily adopted." (*People v. Malcolm, supra,* 47 Cal.App.3d. at p. 222.) Such interpretation "does not mean, however, that the language of the statute must be stretched and strained beyond the limitation of reason. [Citation.]" (*Ibid.*)

 Therefore, "[w]e must use a liberal and commonsense approach to ascertain if a particular act constitutes a vehicle burglary within the confines of Penal Code section 459. [Citation.] This criminal statute is to be construed flexibly in light of the legislative objective to make it more serious to break into the interior sections of locked cars than merely stealing from them. [Citations.]" (*People v. Allen, supra,* 86 Cal.App.4th at pp. 915-916.)

The question of whether a car with locked doors and open windows should be considered locked for purposes of Penal Code section 459 requires just such a commonsense approach. Two cases have dealt specifically with this question.

In *People v. Malcolm, supra,* 47 Cal.App.3d 217 [120 Cal.Rptr. 667], the vehicle's doors were locked, but a wind wing lock was broken, preventing the wind wing from being locked. (*Id.* at p. 219.) The defendant pushed open the wind wing, reached in with his arm and unlocked the door, entered the car and removed items. (*Ibid.*) The court held that "[f]or all intents and purposes the car in question was locked. By mere happenstance, one wind wing was faulty and could not be tightly secured, thereby allowing the defendant to gain entrance into the car. [¶] . . . [¶] . . . We are convinced that the auto burglary statute should be construed flexibly with the principal objective of discouraging the social evil which that statute was designed to prevent." (*Id.* at p. 223, fn. omitted.)

In *People v. Woods, supra,* 112 Cal.App.3d 226 [169 Cal.Rptr. 179], a police officer used his private vehicle as a decoy. (*Id.* at p. 228.) He placed a coin purse and camera on the seat, locked the doors, and rolled one window down five and one-half inches. (*Ibid.*) The defendant walked by, reached in through the open window, and removed the items. (*Ibid.*) He did not unlock the doors, enter the vehicle, or apply force or pressure on any part of the car. He simply reached in through the open window and removed items sitting on the seat.

*Woods* points out that "the statute consistently has been construed in a liberal and common sense manner." (*People v. Woods, supra,* 112

Cal.App.3d at p. 229.) The court concluded "that a reasonable interpretation of the statute where the entry occurs through a window deliberately left open, requires some evidence of forced entry before the prosecution's burden of proof is satisfied." (*Id.* at p. 230.) In *Woods*, although the doors were locked, no force was used and nothing was done to alter the locked state of the vehicle. Therefore, the prosecution was not able to satisfy the burden of proof that the vehicle was locked for the purpose of Penal Code section 459.

■ In the present case, the vehicle's doors were locked and the windows were left partially open for ventilation. The driver's window was open about an inch and the passenger window was open three to four inches. The responding deputy was unable to reach into the vehicle through the opening, but the smaller arm of minor was able to reach in and unlock the door. There was nothing within grabbing distance of the opening in the window.

This is a different situation from *Woods*, where the window was deliberately left down five and one-half inches and the defendant reached in and removed items without unlocking the door. (*People v. Woods, supra*, 112 Cal.App.3d at p. 228.) This is also different from the facts of *Allen*, where the defendant entered an unlocked car and lifted a latch to gain entry to the trunk. (*People v. Allen, supra*, 86 Cal.App.4th at p. 917.)

Minor contends that it was unreasonable for Goehring to expect that his cell phone was secure because he had mistakenly left a window open, rather than having intentionally left it open for ventilation. Goehring's state of mind regarding the security of his cell phone, however, is not at issue. If minor would have reached into the vehicle through the open window and removed the cell phone, without unlocking the door, there would have been no burglary. Or if the vehicle had been unlocked and minor had opened the door, there would have been no burglary. The pertinent issue is whether the locked state of the vehicle was altered.

In *In re Charles G., supra*, 95 Cal.App.3d at page 66, for example, the owner of the vehicle testified that his habit was to always lock the doors. When asked if he locked them prior to the alleged burglary, he said, " 'Well, *to the best of my knowledge, yes*, but, you know, maybe I didn't, but I make it a habit of locking my car . . . .' " (*Ibid.*) There were no signs of forced entry and no burglar tools. (*Id.* at p. 67.) Yet, the trial court found that the vehicle was locked. The appellate court upheld the verdict stating, "A reasonable trier of fact could have found that the prosecution sustained its burden . . . ." (*Id.* at p. 68.) Here, Goehring testified that he had locked the vehicle. Furthermore, minor admitted that he had reached in and unlocked

the door. Minor, then, had altered the locked state of the vehicle in order to remove the cell phone.

Minor also contends that the fact the deputy could not fit his arm through the window opening is not relevant to the issue of whether the vehicle was locked. This is true. Whether a normal adult could reach in through the opening and unlock the door is not a consideration in determining the locked state of the vehicle. The size of the individual is not significant. The burglary occurs by unlocking the doors, by altering the locked state of the vehicle, and entering with the intent to commit larceny.

Last, minor contends that the People did not show minor used force, because reaching in and unlatching the locking mechanism does not require the use of force. For this contention, he relies on *Allen* which is the only case that suggests that no force is used in disengaging a locking mechanism. (*People v. Allen, supra,* 86 Cal.App.4th at p. 917.) Other cases consider illegally unlocking a vehicle to be sufficient force. According to *Mooney,* "unlawfully altering the vehicle's locked state," is sufficient to meet the elements of auto burglary. (*People v. Mooney, supra,* 145 Cal.App.3d at p. 505.) Here, the locked state of the vehicle had to be altered before the cell phone could be removed. Unlike *Lamont R.,* a "mechanism that could reasonably be called a lock" was disengaged. (*In re Lamont R., supra,* 200 Cal.App.3d at p. 248.)

Furthermore, in *Allen,* the doors were unlocked and the defendant opened the unlocked door by pushing a button in the door handle to enter the passenger compartment, and then lifted a latch under the seat to open the trunk. (*People v. Allen, supra,* 86 Cal.App.4th at p. 917.) This is analogous to entering a vehicle in which one door is locked and another unlocked. The vehicle is not locked and entering does not require altering the locked state of the vehicle if one door is unlocked, even if entered through the locked door.

In this case, minor entered a locked vehicle without the owner's consent by illegally unlocking it. Goehring left windows open for ventilation, a reasonable thing to do. The doors were all locked. He did not, as in *Woods,* deliberately leave the window down far enough for someone to reach in and remove items without unlocking a door. The issue is not how far down the window was left, but whether the locked vehicle was entered by "illegally unlocking it [thereby] unlawfully altering the vehicle's locked state." (*People v. Mooney, supra,* 145 Cal.App.3d at p. 505.) As in *Malcolm,* "[f]or all intents and purposes the car in question was locked," and the elements of an auto burglary were met. (*People v. Malcolm, supra,* 47 Cal.App.3d at p. 223.)

## Understanding of Wrongfulness

Next, minor contends the trial court erred in finding that he understood the wrongfulness of his conduct under Penal Code section 26.

Penal Code section 26, which applies to proceedings under Welfare and Institutions Code section 602, articulates a presumption that a minor under the age of 14 is incapable of committing a crime. To defeat this presumption, the prosecution must prove by clear and convincing evidence that at the time the minor committed the charged act he or she knew of its wrongfulness. (Pen. Code, § 26; *In re Manuel L.* (1994) 7 Cal.4th 229, 232 [27 Cal.Rptr.2d 2, 865 P.2d 718]; *In re Jerry M.* (1997) 59 Cal.App.4th 289, 297 [69 Cal.Rptr.2d 148].) "Only if the age, experience, knowledge, and conduct of the child demonstrate by clear proof that he has violated a criminal law should he be declared a ward of the court under [Welfare and Institutions Code] section 602." (*In re Gladys R.* (1970) 1 Cal.3d 855, 867 [83 Cal.Rptr. 671, 464 P.2d 127].)

On appeal, we must review the whole record in the light most favorable to the judgment and affirm the trial court's findings that the minor understood the wrongfulness of his conduct if they are supported by "substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof. [Citations.]" (*In re Jerry M., supra,* 59 Cal.App.4th at p. 298; see also *In re Marven C.* (1995) 33 Cal.App.4th 482, 486-487 [39 Cal.Rptr.2d 354]; *In re Cindy E.* (1978) 83 Cal.App.3d 393, 398-399 [147 Cal.Rptr. 812].) The trier of fact, not the appellate court, must be convinced of the minor's guilt, and if the circumstances and reasonable inferences justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. (*People v. Bean* (1988) 46 Cal.3d 919, 932-933 [251 Cal.Rptr. 467, 760 P.2d 996].) This standard of review applies with equal force to claims that the evidence does not support the determination that a minor understood the wrongfulness of his conduct. (*In re Paul C.* (1990) 221 Cal.App.3d 43, 52 [270 Cal.Rptr. 369].)

In determining whether the minor knows of the wrongfulness of his conduct, the court must often rely on circumstantial evidence such as the minor's age, experience, and understanding, as well as the circumstances of the offense, including its method of commission and concealment. (*In re Jerry M., supra,* 59 Cal.App.4th at p. 298; *In re Marven C., supra,* 33 Cal.App.4th at p. 487.) Generally, the older a child gets and the closer he

approaches the age of 14, the more likely it is that he appreciates the wrongfulness of his acts. (*In re Marven C., supra*, 33 Cal.App.4th at p. 487; *In re Paul C., supra*, 221 Cal.App.3d at p. 52.)

 On the date of the incident, minor was 12 years and 10 months old. When apprehended, minor indicated that he understood his *Miranda* rights and chose to waive them. (*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].) He further told the deputy that he did not want to lie anymore, and wanted to tell the deputy that "he had done it," then proceeded to show the deputy where the phone had been placed in some bushes. These comments indicated that minor was aware that his specific act of taking the cell phone from the vehicle was wrong. Having initially lied and hidden the evidence, and then leading the deputy to it, all indicate that minor was aware of the wrongfulness of his actions.

When asked if he knew the difference between right and wrong, minor said, "[a] little bit." He went on answering questions with examples of things that are right and wrong to do, and said that his parents punish him for doing things they have taught him are wrong to do. These answers indicate that minor had general knowledge of the difference between right and wrong and that punishment can result from wrongdoing.

Based upon his answers to questions indicating that he was generally aware of the difference between right and wrong, and circumstantial evidence of his behavior, including comments that he did not want to lie about the act anymore and his effort to conceal the cell phone, there is sufficient evidence to support a finding that minor understood the wrongfulness of entering a locked vehicle and taking property.

### DETERMINATION OF JURISDICTION

 Minor's final contention is that the court improperly considered the social study report prior to making its determination of jurisdiction. His contention is based upon Welfare and Institutions Code sections 701, 702, and 706, which created a two-step proceeding. The first step is the determination of jurisdiction, and the second step is determination of the appropriate disposition and placement. The court may only consider the social study report in the second step, because the report may include legally incompetent material, inadmissible in the first step. (*In re Gladys R., supra,* 1 Cal.3d 855, 859-860 [83 Cal.Rptr. 671, 464 P.2d 127].)

In *In re Gladys R.*, the court had read the social study report before the jurisdictional finding had been made, resulting in prejudicial error. (*In re*

*Gladys R., supra,* 1 Cal.3d at p. 861.) In this case, minor admits that the court had not read the social study report, but argues that the trial court may have relied upon the type of information likely to be contained in the report in determining minor's understanding of wrongfulness. That information was provided to the trial court when the prosecution asked the trial court to take judicial notice of the alleged fact that minor was on informal probation and had two prior encounters with law enforcement. Minor contends that this information "was similar to that which would have been contained in the minor's social study report . . . ."

The prosecutor raised the issue after both parties rested and during final argument. The defense objected and the prosecutor said, "I'm not arguing that anything was found true. The Court can take judicial notice of the fact that he was on informal probation and the fact that he has encounters with police are [*sic*] not an issue." The court did not rule on the objection and did not take judicial notice of the minor's record. The statements made by the prosecutor were not acknowledged by the court and were not mentioned in the court's explanation of its decision.

"The bifurcated juvenile court procedure prescribed in Welfare and Institutions Code sections 701, 702, and 706 . . . [citations] is designed to provide a jurisdictional hearing at which competent evidence is adduced, and to make certain the jurisdictional order is made *before* the social study report containing material irrelevant to the issue of guilt is considered. [Citation.]" (*In re Joseph G.* (1970) 7 Cal.App.3d 695, 700 [87 Cal.Rptr. 25].) In *In re Joseph G.*, the court read the jurisdictional report, not the social study report, before issuing the jurisdictional order. (*Ibid.*) The jurisdictional report, like the social study report, contained inadmissible opinion evidence and the court reasoned that "[i]t would be anomalous . . . to hold that the juvenile court judge cannot consider the social studies report in determining jurisdiction, yet the probation officer who prepares the social studies report may recommend to the judge how the jurisdictional issue should be determined." (*Ibid.*) The court held that the error was not reversible, however, because the judge did not read the social studies report, there was no objection to the evidence, and the record showed that "the juvenile court judge distinguished the factual matters in the report from the probation officer's conclusions . . . ." (*Id.* at p. 701.)

Here, the prosecutor mentioned prior police encounters. This is information of the type included in the social study report and, like the information in the report in *In re Joseph G.*, inadmissible at a jurisdictional hearing. Wrongful evidence of police encounters is not as prejudicial as evidence of prior convictions, but "even when improper evidence of a prior conviction is

admitted by misconduct, the misconduct is not reversible in the face of convincing evidence of guilt: 'Improper evidence of prior offense results in reversal *only* where the appellate court's review of the trial record reveals a closely balanced state of the evidence. [Citations.]' " (*People v. Parsons* (1984) 156 Cal.App.3d 1165, 1171 [203 Cal.Rptr. 412], italics added.) Here, the determination of jurisdiction was not made by closely balanced evidence. The minor's age, answers to the officer's questions regarding understanding of wrongfulness, and behavior as described in testimony all weigh heavily in favor of the court's finding. Therefore, any error relating to the prosecutor's statement of improper material was harmless.

In this case, the court did not review the social study report, and had sufficient evidence to make a determination without having considered any of the information contained in the report. There is no evidence that the court considered the social study report or information from that report in making its ruling regarding jurisdiction.

## DISPOSITION

The judgment is affirmed.

Ward, J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 10, 2003. Kennard, J., and Chin, J., were of the opinion that the petition should be granted.