Filed 4/8/15  In re Joseph G. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re JOSEPH G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>            v.<br><br>JOSEPH G.,<br><br>    Defendant and Appellant. | F066851<br><br>(Super. Ct. No. 12CEJ600036)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  John F. Vogt, Judge.

Nuttall & Coleman, Roger T. Nuttall for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and John W. Powell for Plaintiff and Respondent.

-ooOoo-

Joseph G., a minor, appeals from a dispositional order of the juvenile court following its determination that he committed a lewd act upon a child in violation of

Penal Code[1] section 288, subdivision (a).  Joseph was found to have touched the vagina of a six-year-old girl during an incident that occurred approximately six weeks prior to his thirteenth birthday.  The issues on appeal concern the sufficiency of the evidence as to Joseph's ability to understand the wrongfulness of his conduct at the time of the offense, and the existence of his intent to obtain some form of sexual gratification.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The events in question occurred at a house where Joseph lived with his great-grandparents, a great-aunt and great-uncle, and a second cousin.  His age at the time was 12 years and 10 months.  The great-grandparents were Joseph's legal guardians and owned the home where he resided.  His great-uncle was a quadriplegic who received assistance with daily living from Joseph's great-grandparents and a third-party caregiver named Carmen.  Carmen is the mother of the victim in this case.

On January 9, 2012, Joseph's great-grandparents asked Carmen to begin her shift early, at 5:00 p.m. instead of 6:30 p.m., so that they could leave the house to attend a birthday dinner.  Carmen arrived at the requested time accompanied by her six-year-old daughter (the victim), four-year-old son, and an infant child.  According to Carmen, Joseph was waiting outside when they arrived and requested permission to play with her two oldest children on a boat parked along the side of the house.  The request did not strike Carmen as unusual, since Joseph and her children had played together on numerous occasions, and so she assented.  Accounts in the record differ slightly as to what transpired next, but the parties agree that prior to the departure of Carmen and her children from the home at approximately 7:30 p.m., the victim informed her mother that Joseph "touched" her while they were on the boat.

Later that evening, as Carmen was driving home, the victim tearfully complained to her about the touching incident and of pain that she was experiencing between her legs.

---

[1] All statutory reference are to the Penal Code unless otherwise specified.

The victim used the bathroom when she arrived home, at which point Carmen discovered blood on her daughter's underwear and in the toilet. The victim was thereafter taken to the hospital for an evaluation. Medical professionals confirmed that she was bleeding from, and appeared to have sustained physical trauma to, her internal genitalia.

On January 11, 2012, the Fresno County District Attorney filed a juvenile wardship petition under Welfare and Institutions Code section 602, subdivision (a), alleging that Joseph committed a lewd act upon the victim with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the victim (§ 288, subd. (a)). A contested jurisdictional hearing was held in late November and early December 2012. The juvenile court received testimony from several witnesses including Carmen, the victim, Joseph's great-grandmother and great-aunt, law enforcement officers, one of the victim's health care providers, and a retained defense expert.

Carmen testified that she noticed something was wrong with her daughter as soon as Joseph and the children came into the house after being outside on the boat. Joseph invited the victim and her brother into his bedroom to play video games, but the victim turned to Carmen and said, "I don't want to go play with him, Mom." Joseph's great-aunt and his second cousin entered the home as these events were unfolding, and both were present when Carmen realized the victim's clothing was askew. Joseph's relatives stepped away so that Carmen and her daughter could have a private conversation, and Carmen proceeded to ask the victim why the waistband of her pants was rolled down. The victim began to cry and said that Joseph had touched her, but she also reported that he had merely rubbed against her, and told Carmen she did not want to talk about what

3.

had happened. When Carmen asked if the touching occurred by accident, the victim responded affirmatively but continued to cry.[2]

On their drive home, the victim started crying again and said, "I'm scared. Joe touched my thing… It hurts, Mom." The victim further alleged that she had told Joseph to "stop" and warned him that she would tell Carmen what he was doing to her, to which he replied, "No, don't tell [your mother], please....I'm going to get in trouble with my grandma." When Carmen questioned the victim's brother about these events, the boy said that Joseph had given him a Nerf gun and told him to use it to shoot rabbits on the property. The victim acknowledged this was true; she told Carmen that her brother had been playing with the toy gun on the side of the boat and that she did not know his exact whereabouts at the time of the incident.

The victim broke down in tears several times while testifying at the jurisdictional hearing. Pointing to locations on a diagram and on a stuffed animal, the victim indicated that Joseph had pulled down her pants and touched her in the groin area, and further testified that the touching was physically painful. She confirmed the incident occurred on the boat, while her brother was "shooting the rabbits," and that Joseph told her not to tell Carmen about what he had done.

The victim was examined at the hospital by Philip Hyden, M.D., a pediatrician who specializes in child abuse. The results of the examination showed the victim was bleeding from her vaginal area and had swelling of the hymen and surrounding tissue. Dr. Hyden explained that while it does not take a great deal of force to cause a hymenal

---

[2] Joseph's great-aunt disputed some of the details in this version of events. She recalled that Carmen and the victim had a conversation approximately two or three minutes after the children came inside from playing on the boat, during which Carmen said, "So Joseph accidentally touched you on the outside of your clothing down there?" The victim nodded affirmatively, and said "Yes" when her mother asked, "Are you telling me the truth?" At no time did Joseph's great-aunt observe or hear the victim crying, nor did she see the victim's clothing in a state of disarray.

injury, it is an unusual place for a child to experience trauma since the hymen is located in a recessed area protected by the labia minora and majora.  The symptoms were consistent with the allegations of skin-to-skin contact with a finger.  However, while Dr. Hyden felt that this was a "highly suspicious incident" suggestive of a sexual assault, he could not diagnose sexual abuse as the cause of the victim's physical condition to a reasonable degree of medical certainty.

Testimony from the great-grandmother revealed that Joseph was sexually molested by an older boy sometime around the age of seven.  His great-grandparents reported the incident to Joseph's therapist and subsequently attempted to provide him with basic sex education.  Joseph's great-grandfather told him, "[Y]ou don't let anybody touch your private area and you are not to touch anybody else's private area."  Based on her long-term familiarity with Joseph and the manner in which she had raised him, Joseph's great-grandmother believed he knew, at the time of the incident, that "it would be wrong to do what he has been accused of doing" to Carmen's daughter.

Joseph had a history of behavioral problems, but nothing involving sexual misconduct.  According to the testimony of his great-grandmother, Joseph showed no outward signs of pubescent development at the time of the incident, nor had he displayed any interest in matters of sexuality.  This was consistent with the findings of psychologist Michael Zimmerman, Ph.D., who was hired by the defense to determine whether Joseph fit the profile of a sexual deviant or molester.  Dr. Zimmerman interviewed Joseph several times, reviewed his medical and academic records, and administered to him a series of standardized tests and questionnaires.  The testing indicated that Joseph had a low IQ; his "low average" scores on all parts of the Wechsler Intelligence Scale for Children were cumulatively indicative of borderline intellectual functioning, meaning "borderline below average and mental retardation."  Dr. Zimmerman also found Joseph to be psychosexually delayed, with no apparent curiosity or interest in sexual activity.

After considering the evidence presented and hearing closing arguments by counsel, the juvenile court found (1) Joseph willfully made skin-to-skin contact with the victim's vagina using his finger(s), and the contact did not occur by accident or inadvertence; (2) Joseph knew such acts were wrongful in nature; and (3) Joseph's behavior was sexually motivated, i.e., he acted with the specific intent to arouse, gratify, or appeal to his own lust, passions, or sexual desires. On January 10, 2013, Joseph was adjudged a ward of the court and received probation, the terms of which allowed him to continue to reside with his great-grandparents. This timely appeal followed.

## DISCUSSION

We review the sufficiency of the evidence in juvenile court proceedings under the same standard applicable to adult criminal appeals. (*In re Muhammed C*. (2002) 95 Cal.App.4th 1325, 1328.) "In considering the sufficiency of the evidence in a juvenile proceeding, the appellate court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence - such that a reasonable trier of fact could find the [minor] guilty beyond a reasonable doubt. We must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence [citation] and we must make all reasonable inferences that support the finding of the juvenile court.'" (*In re Babak S*. (1993) 18 Cal.App.4th 1077, 1088-1089.)

The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the challenged findings and orders of the juvenile court. (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 228.) It is not our place to reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts in the record. (*Ibid*.) "This standard of review applies with equal force to claims that the evidence does not support the determination that a juvenile understood the wrongfulness of his conduct." (*In re Jerry M*. (1997) 59 Cal.App.4th 289, 298 (*Jerry M*.).)

6.

**Sufficiency of the Evidence re: Joseph's Capacity to Commit the Offense (§ 26)**

Children under the age of 14 years are presumed by law to be incapable of committing a crime. (§ 26; *In re Manuel L.* (1994) 7 Cal.4th 229, 231-232 (*Manuel L.*).) The statutory presumption may be rebutted by "clear proof that at the time of committing the act charged against them, they knew its wrongfulness." (§ 26.) Thus, to declare a child a ward of the juvenile court under Welfare and Institutions Code section 602 based on a criminal offense committed when he or she was less than 14 years old, there must be "clear proof" that the minor appreciated the wrongfulness of their actions. (*Manuel L.*, *supra*, 7 Cal.4th at pp. 231-232.)

The issue of a juvenile's criminal capacity is separate and distinct from the elements of the offense upon which the petition for wardship is based. (*Manuel L.*, *supra*, 7 Cal.4th at pp. 236, 238.) "[I]t is akin to the question of sanity, which due process does not require the prosecution to prove beyond a reasonable doubt." (*Id*. at p. 238.) As used in section 26, the term "clear proof" means "clear and convincing evidence." (*Manuel L., supra,* at p. 238.) "In determining whether the minor knows of the wrongfulness of his conduct, the court must often rely on circumstantial evidence such as the minor's age, experience, and understanding, as well as the circumstances of the offense, including its method of commission and concealment." (*In re James B*. (2003) 109 Cal.App.4th 862, 872; accord, *People v. Lewis* (2001) 26 Cal.4th 334, 379 ["A trier of fact making a section 26 determination does not attempt to read the mind of the minor, but considers the objective attendant circumstances of the crime - such as its preparation, the method of its commission, and its concealment…."].)

Joseph submits that while he may have known it was wrong to touch the victim's genitals, the People failed to prove he understood the wrongfulness of engaging in such behavior for the purpose of achieving sexual gratification. We disagree with the premise of this argument. Case law indicates that the relevant inquiry is whether the child appreciated the wrongfulness of the actus reus of the offense. There is no additional

requirement that the minor have the intellectual sophistication to conceptualize or articulate his or her objectives in the language of section 288 (i.e., to realize they are acting "with the intent of arousing, appealing to, or gratifying [their] lust, passions, or sexual desires…"). Showing the minor behaved with the required mens rea of the crime is a separate component of the People's burden and requires proof beyond a reasonable doubt. The case of *Jerry M., supra,* illustrates these distinctions.

In *Jerry M*., an 11-year-old boy was accused of violating section 288, subdivision (a) after he touched the breasts of three girls who were between the ages of 12 and 13. (*Jerry M*., *supra*, 59 Cal.App.4th at pp. 292-294.) The evidence showed the boy's mother had taught him that "it was wrong to touch girls in certain places," and despite his apparent understanding of this concept, he persisted in his behavior when the victims verbally declined and/or resisted his advances. (*Id*. at pp. 298-299.) The appellate court ultimately found the evidence insufficient to establish the minor's criminal intent beyond a reasonable doubt as required by section 288, but held that the aforementioned circumstances provided adequate proof with respect to his knowledge of the wrongfulness of his conduct for purposes of section 26. (*Jerry M*., *supra*, 59 Cal.App.4th at pp. 298-300.)

Here, it is significant that Joseph was nearly 13 years old at the time of the incident. (*Jerry M*., *supra*, 59 Cal.App.4th at p. 300 ["[T]he closer the minor approaches the age of 14 years, the more likely the minor understands the wrongfulness of his acts within the meaning of section 26."].) Despite evidence of developmental delays, it was shown that Joseph was himself a victim of sexual molestation, received counseling for that experience, and had been taught not to touch others in their "private area." It appears that in light of those experiences, the juvenile court placed considerable weight upon the great-grandmother's opinion that Joseph would have known it was wrong to insert his fingers into the victim's vagina. The circumstances under which the touching occurred, along with Joseph's alleged exhortation that the victim keep the incident a secret, can

8.

fairly be characterized as evidence of concealment and consciousness of guilt. Viewing the record in the light most favorable to the findings, we conclude there was sufficient evidence to meet the applicable standard of proof under section 26.

**Sufficiency of the Evidence re: Joseph's Sexual Intentions (§ 288, subd. (a))**

Section 288 prohibits all forms of sexually motivated contact with children under the age of 14 years. (*People v. Martinez* (1995) 11 Cal.4th 434, 444 (*Martinez*).) The statute speaks in terms of "arousing, appealing to, or gratifying the lust, passions, or sexual desires" of the accused or the victim, and the union of such intent with the underlying act must be proven beyond a reasonable doubt. (§ 288, subd. (a); *In re Randy S.* (1999) 76 Cal.App.4th 400, 405 (*Randy S.*); *In re Paul C.* (1990) 221 Cal.App.3d 43, 54.) The objective of the accused is rarely provable by direct evidence, thus requiring the trier of fact to evaluate the totality of the circumstances in order to determine whether the minor acted for purposes of sexual gratification. (*Martinez*, *supra*, 11 Cal.4th at pp. 444-445; *Jerry M.*, *supra*, 59 Cal.App.4th at p. 295.)

Factors relevant to determining the minor's intent include the manner in which the touching occurred, the use of any coercion, deceit, or enticement to obtain the victim's cooperation, attempts to avoid detection, admonishment of the victim not to disclose the incident to others, physical evidence of sexual arousal, and the overall maturity of the child. (*Randy S.*, *supra*, 76 Cal.App.4th at pp. 405-406; *Jerry M.*, *supra*, 59 Cal.App.4th at p. 299.) The trier of fact may also take into account "the presence or absence of any nonsexual purpose" for the contact. (*Martinez*, *supra*, 11 Cal.4th at p. 450, fn. 16.) "While it is reasonable to assume that if a young child is incapable of experiencing sexual arousal, the child would not intend to arouse his own sexual desires, it is likewise reasonable to assume that when a young child begins to experiment in sexual arousal, the child *can* harbor an intent to arouse his own sexual desires." (*Randy S.*, *supra*, 76 Cal.App.4th at p. 406.)

We have already mentioned the evidence in *Jerry M., supra*, which is the only case cited by Joseph where an appellate panel overturned a juvenile court's findings of intent under section 288 on grounds of insufficient evidence. As noted, 11-year-old Jerry touched the breasts of three young girls. Twelve-year-old Clair was with a group of friends when Jerry approached them and squeezed Clair's breasts through her shirt. (*Jerry M.*, *supra*, 59 Cal.App.4th at p. 294.) In a separate incident, a 13-year-old girl named Stephanie was standing near the mailboxes of her apartment complex when Jerry touched her breasts with his fingertips, saying, "those grew" and "those feel good." A similar situation occurred with 12-year-old Sonia, who was on the steps of her apartment building when Jerry asked if she was "flat" and then proceeded to reach underneath her shirt and brassiere. (*Ibid*.)

Placing emphasis on Jerry's young age and prepubescence, the Fourth District concluded that the evidence did not show the minor's intent to sexually arouse himself. (*Jerry M.*, *supra*, 59 Cal.App.4th at p. 300.) The court's analysis took into account that Jerry's conduct was very public, occurring during the daytime and in the presence of others, and thus there was no attempt or opportunity to avoid detection. No clandestine activity occurred, nor did the minor ask the girls not to tell anyone what had happened. The touching was momentary, without any caressing or attempts to prolong the contact. From the totality of these circumstances, the appellate court concluded that "Jerry was a brazen 11-year-old whose conduct was more consistent with an intent to annoy and obtain attention than with sexual arousal." (*Ibid*.)

The sentiment underlying *Jerry M.* is that the natural, normal curiosity of a prepubescent child, even if inappropriately expressed, should not be viewed as criminal. However, the same district found sufficient evidence of sexual motivation on the part of a prepubescent boy in *Randy S.*, *supra*, which was published two years after *Jerry M.* was decided. Randy was also 11 years old and had not yet reached puberty when he inserted his fingers into his two-year-old stepsister's vagina while they were inside of a bathroom

10.

together.  (*Randy S*., *supra*, 76 Cal.App.4th at pp. 403-405.)  The victim's genitals were discovered to be "red, raw, [and] swollen" as an apparent result of the touching.  (*Id*. at p. 403.)  When confronted by his angry stepmother, Randy took responsibility for the touching but said that he did know why he had done it.  He later recanted the confession, claiming that he simply told her "what she wanted to hear."  (*Id*. at p. 404.)  Despite the lack of evidence that Randy experienced physical arousal during or from the touching of his stepsister, the appellate court upheld the finding that he had acted with the requisite intent under section 288, subdivision (a).  "Although he may only have been experimenting sexually, his actions clearly evidenced an intent to sexually stimulate himself."  (*Id*. at p. 407.)  Factors cited in support of this conclusion included the type of touching that was involved, the clandestine nature of the incident, and the minor's attempt to "evade the consequences of his actions."  (*Ibid*.)

Returning briefly to the applicable standard of review, we emphasize it is the juvenile court, not the appellate court, which must be convinced beyond a reasonable doubt of the minor's criminal intent.  (*In re Brandon T*. (2011) 191 Cal.App.4th 1491, 1496, citing and quoting *People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)  When the circumstances reasonably justify the trier of fact's findings, "the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."  (*Ibid*.)  While a number of parallels and distinctions can be drawn between the facts of this case and those which carried the day in *Jerry M*. and *Randy S*., the juvenile court was in a better position than we are to evaluate the witnesses, weigh the evidence, and consider the totality of the circumstances.

The analyses in *Jerry M*. and *Randy S*. indicate that a trier of fact's determination regarding culpable and non-culpable behavior in cases involving a prepubescent minor may hinge on the factors of secrecy, consciousness of guilt, and the nature of the actual touching.  In this instance, a rational fact finder could have interpreted the evidence as showing that Joseph acted with a sufficiently advanced level of planning and preparation

11.

by (1) waiting outside his house for the victim to arrive and immediately leading her to an isolated location, i.e., the boat, (2) ensuring their privacy by distracting her brother with the toy gun and telling him to go shoot rabbits, and (3) requesting that the victim keep his actions a secret. As so interpreted, there was proof of clandestine activity, the attempt and opportunity to avoid detection, and admonishment to the victim not to disclose the occurrence.

As stated by our Supreme Court in *Martinez*, *supra*, "[T]he circumstances of the touching remain highly relevant to a section 288 violation." (*Martinez*, *supra*, 11 Cal.4th at p. 452.) Here, the juvenile court clearly felt that digital penetration of the victim's genitalia was a more inherently sexual act in comparison to the momentary touching of breasts. Unlike in *Jerry M.*, there was no evidence that the purpose of Joseph's behavior was to harass or annoy the victim, or to make a spectacle of himself in front of others. The form of touching was essentially identical to the conduct in *Randy S.*, but even there the defense had shown that Randy's actions might have been motivated by feelings of hostility towards his stepsister. (*Randy S.*, *supra*, 76 Cal.App.4th at p. 408.) There was no similar proof of hostility in this case, but the evidence that Joseph removed the victim's clothing and inserted his finger inside of her to the point of causing pain and injury supports the inference of an attempt to prolong the touching beyond a brief or momentary contact, which further distinguishes this case from *Jerry M.*

Joseph may only have been experimenting sexually, and possibly for the very first time, but the juvenile court believed the evidence led to "the unavoidable conclusion that this was a sexually motivated act, no matter how nescient or unsophisticated that intent may [have been]." Case law indicates that the circumstances surrounding the incident were such that a reasonable trier of fact could objectively arrive at the same conclusion. Therefore, when cast in the light most favorable to the decision below, the record contains sufficient evidence of the intent required to establish a violation of section 288, subdivision (a).

12.

## **DISPOSITION**

The order of wardship is affirmed.

_____
Gomes, J.

WE CONCUR

_____
Hill, P.J.

_____
Franson, J.

13.