[Crim. No. 3042. Second Appellate District, Division One.—March 4, 1938.]

THE PEOPLE, Respondent, v. CLAUDE J. SMITH, Appellant.

Gladys Towles Root and David B. Larimer for Appellant.

U. S. Webb, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondent.

WHITE, J.—The defendant, who was charged with the crime of murder, was convicted of murder in the first degree. The jury, which returned the verdict of guilty, recommended that the defendant be sentenced to life imprisonment. The trial court denied defendant's motion for a new trial and pronounced judgment whereby defendant was sentenced to life imprisonment. From the judgment, sentence, and from the court's order denying his motion for a new trial, defendant appeals.

Appellant contends that the evidence is insufficient to sustain the verdict of murder in the first degree. Examination of the record impels the conclusion that appellant was properly convicted of murder in the first degree. The transcript shows that evidence was submitted to the jury which tended to prove that the deceased was a roomer in

the home of appellant; that about 1:30 on the afternoon of the homicide, deceased was seen running out of appellant's house; that after he had traveled about twenty feet, appellant appeared in the doorway, and simultaneously therewith a shot was fired. It was further shown that deceased received a gunshot wound in the small of the back, from the effects of which he died some five weeks later. It was also testified that a short time after the shot was fired, the deceased was seen getting up from the ground, while appellant was standing over him. The latter held a gun in his hand. There was also evidence that after the deceased got to his feet, appellant pointed the gun at deceased's back, and the two men walked back into the house. Some five minutes later, appellant was observed to drag deceased out of the house and throw him "into the curbing". Appellant stood over deceased with a gun in hand, saying to deceased, "Get up and walk," to which the deceased replied, "I can't walk. You will kill me." When the officers arrived, appellant, with a gun in his hand, was still standing over deceased. When taken from appellant by the officers, the gun contained five loaded cartridges and one empty cartridge. The smell of freshly burned powder indicated that the gun had recently been fired, which fact was affirmed by appellant in the presence of the officers. When, in the presence of appellant, the deceased accused the former of having shot him, appellant remained mute.

The above recital of evidence which was introduced during the trial demonstrates the futility of appellant's contention that the offense of which he was guilty was less serious than that of which he was convicted, and also negatives his claim that while defending himself from attack by the deceased, and while the latter was in possession of the gun, the weapon was accidentally discharged during a scuffle for its possession.

The principle is well established that express evidence of a deliberate purpose to kill is not required to warrant a verdict of guilty of murder in the first degree. The necessary element of premeditation may be inferred from proof of such facts and circumstances as will furnish a reasonable foundation for such an inference. (*People* v. *Mahatch,* 148 Cal. 200, 202 [82 Pac. 779] ; *People* v. *Machuca,* 158 Cal. 62, 64 [109 Pac. 886] ; *People* v. *Bennett,* 161 Cal. 214, 218 [118 Pac. 710] ; *People* v. *Erno,* 195 Cal. 272, 278 [232 Pac.

710].) It has often been said that "there need be no appreciable space of time between the intention to kill and the act of killing; they may be as instantaneous as successive thoughts of the mind. It is only necessary that the act of killing be preceded by a concurrence of will, deliberation, and premeditation on the part of the slayer, and if such is the case, the killing is murder in the first degree, no matter how rapidly these thoughts of the mind may succeed each other, or how quickly they may be followed by the act of killing". (*People* v. *Bellon,* 180 Cal. 706, 710 [182 Pac. 420].)

Appellant testified that the revolver from which the fatal shot was fired was accidentally discharged while held in the hand of deceased in back of him during a scuffle wherein appellant sought to disarm his alleged assailant. The verdict of conviction indicates that the jury rejected appellant's explanation of the homicide and arrived at the conclusion that he shot the victim with malicious deliberation while the latter was fleeing from attack by appellant. It requires something more than optimism to argue that the jury was not warranted in drawing an inference of malice from the circumstances which surrounded the homicide in this case.

▆ Appellant's second contention is that the trial court erred in overruling his objections to certain evidence and sustaining objections interposed by the district attorney to certain testimony offered by the defense. During the trial medical testimony was produced from the physician who performed an operation upon the deceased prior to his death and by the surgeon who performed the autopsy. Appellant objected to certain of this testimony concerning the course of the fatal bullet after it entered the body of deceased on the ground that "there is no foundation laid for any ballistic testimony", which objection was overruled. This ruling was correct. No question of ballistics was involved. The doctors were testifying as to the actual conditions they found in the body of deceased during the performance of an operation and an autopsy. They were testifying to existing physical facts regarding the injuries sustained by reason of the gunshot wound. They traced the course of the bullet only in so far as their physical examination disclosed perforation of or damage to various organs of the body touched by the bullet as it passed through the deceased. Their testimony

went to the nature of the injuries caused by the bullet, concerning which they were as competent to testify as they were, for instance, concerning the cause of death. The question of ballistics was not even remotely involved.

During the trial appellant produced a qualified ballistics expert, from whom he sought to elicit testimony of an expert nature as to whether, in the opinion of the expert, assuming the gun was held as testified by appellant in the right hand of deceased, which hand was forced to his back by appellant, that the gun could have been fired while in that position in such a manner as to have caused the wound which deceased received in his back within two inches of the center thereof. The court properly sustained the objection to this line of testimony. There was admittedly only one bullet wound, and consequently no question as to where the bullet entered the body of deceased. Had the ballistics expert been asked for his opinion, based on his examination of the fatal bullet and his conceded knowledge of ballistics, as to the distance from which the shot was fired, his answer would have been competent and possibly helpful evidence, in view of the claim of defendant that the gun was discharged while held within a few inches of the deceased's back, and the theory of the prosecution that the deceased was shot at a distance of some twenty feet from where appellant was standing.

Appellant's final contention is that the trial court was guilty of error in sustaining an objection to testimony proffered by way of impeachment of a police officer. The record indicates that at the trial an officer testified that there was a large bump on the forehead of deceased, and also that appellant told the officers at the scene of the homicide that he did not shoot the deceased, but that he "beat the hell out of him". Appellant then attempted to impeach such testimony by asking the witness if he so testified at the preliminary examination, to which question an objection was sustained; whereupon appellant read into the record certain testimony given at the preliminary hearing, with an offer to prove thereby that nothing was said by the witness concerning any conversation about "beating the deceased, or of any appearance of physical violence upon the deceased except a bullet wound in the lower part of his back". To this offer of proof the trial court sustained an objection. This ruling

was proper, because the record does not indicate that at the preliminary examination the witness was directly asked concerning the appearance of any injury upon the body of the deceased other than the bullet wound; while with reference to any conversation, the transcript shows that at the preliminary examination the witness sought to be impeached testified to a conversation with deceased in the presence of appellant as follows:

"We asked him, 'Why did he shoot you?' He said, 'He accused me of taking his purse.' We said, 'Did you take his purse?' And he said, 'No, I didn't take his purse, and I tried to tell him that, but he beat me over the head and then shot me.' "

In disposing of this question, we must not be understood as overlooking or departing from the well-established rule that such evidence of statements made in the presence of a defendant is admissible only upon three theories: first, that it is part of the *res gestae;* second, as a dying declaration; and third, as an accusatory statement made in the presence of the defendant upon an occasion and under circumstances such as afford the accused person an opportunity to act or speak, and when the statement is one naturally calling for some action or reply. It is at once apparent that the statement aforesaid is not admissible on the first two stated grounds, because no proper foundation was laid therefor; and upon the last-named ground such evidence is never admissible as proof of any fact, but solely for the purpose of showing the demeanor and actions, if any, of the defendant in the face of an accusatory statement; and when such accusatory statement is promptly denied by the defendant, it is inadmissible for any purpose.

Further, no proper foundation was laid for impeachment, nor did the testimony offered tend to show that at the trial the witness gave testimony at variance or in conflict with testimony given at the preliminary hearing in connection with any matter about which he was interrogated.

Since no appeal lies from the sentence, the attempted appeal therefrom is dismissed.

For the reasons stated, the judgment and order from which this appeal is taken are affirmed.

York, P. J., and Doran, J., concurred.