[Crim. No. 4849.   Second Dist., Div. Three.   Dec. 4, 1952.]

THE PEOPLE, Respondent, v. PETER JOSEPH BURNS, Defendant; CARLOS FORREST DeCOSTA, Appellant.

Ellery E. Cuff, Public Defender, and J. Stanley Brill, Deputy Public Defender, for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendants Burns and DeCosta were accused of burglary, committed by entering an automobile, the doors of which were locked.   Burns admitted an allegation in the information that he had been convicted previously of a felony.   In a trial by jury the defendants were found guilty of burglary in the second degree.   Burns was referred to the California Youth Authority.   DeCosta's application for probation was denied, and the judgment was that he be imprisoned in the county jail for one year.   He appeals from

the judgment and from the order denying his motion for a new trial.

Appellant contends that the verdict is contrary to the evidence and the law; the court erred in receiving extrajudicial statements in evidence, and erred in instructing the jury.

On January 1, 1952, two police officers in an automobile were patrolling an area near the Pasadena Rose Bowl, where automobiles were parked by persons who were attending the football game. The automobiles were parked in double rows with lanes between the double rows so that the automobiles could be driven from the parking area. In the front row of one of the double rows there was a Buick four-door sedan automobile, facing south, which had an Illinois license plate on it. In the rear of that double row and directly behind' the Buick automobile there was a Pontiac automobile which was facing north. The backs of the two automobiles were about 4 feet apart.

One of the officers testified that he was driving the police automobile in a westerly direction in the lane near the Buick; when he was about 30 feet from the Buick, he saw the appellant who "kind of raised up" behind the Buick, stood facing the officers, and moved his lips; appellant then turned around and walked to the Pontiac, which had "a lot of people" in it; he (witness) stopped the police automobile and the other officer got out, walked between the Buick and Pontiac and talked to appellant; about 2½ minutes later the left front door of the Buick opened and defendant Burns got out of the Buick; he (witness) immediately got out of the police automobile and questioned Burns; Burns stated that he was not the owner of the automobile—he was in the automobile waiting for the people who owned it to come back from the football game; he (witness) examined the Buick and saw that the left windwing was broken; scattered glass was on the front seat, and glass was on the running board; the glove compartment was open, a flashlight was on the floor, and a leather carrier for camera bulbs was open on the front seat; a suitcase was open on the rear seat; also a checkbook, letters, papers and miscellaneous articles were on the rear seat. He also testified that he and the other officer had a conversation with the defendants at the police station; appellant, in the presence of Burns, said that he left the Pontiac, went for a walk, returned to the rear of the Pontiac and was "looking for what was making a rattle"

in the car, and when "he raised up between the cars" he saw the police car and saw Burns inside the Buick; Burns jumped out of his chair and said that he was not going to take this beef alone, that appellant smashed the rock into the window, reached in and unlocked the window so that the door could be unlocked, and told Burns to go in and go through it, and he would keep watch by the car; after Burns made those statements, appellant said that Burns was lying.

The other officer testified that there were seven persons in the Pontiac—three girls and four boys; the Pontiac was registered in the name of the father of one of those boys; when he walked over to appellant he (officer) asked him what he was doing "down there," and appellant said that he was stretching his legs—that he and the other occupants of the Pontiac had been to the Rose Parade that day and in leaving had been caught in traffic going to the Rose Bowl; they were unable to get out of the traffic and were waiting in the parking area for traffic to ease up so they could leave. The officer also testified that he had a conversation with Mr. Schmidt, the owner of the Buick, in the presence of the other officer and the two defendants; Mr. Schmidt said that he lived in Dixon, Illinois; that on January 1st, about 2 p. m., he parked his Buick near the Rose Bowl, "that he had left all of the doors and vent wings in a locked condition," and he gave no one permission to enter the vehicle in his absence; Mr. Schmidt also said that his son left a camera case on the front seat and his wife left a train case on the back seat, that when he returned to the car after the football game he found that the left front vent window had been broken, and it was open. The officer testified that he then asked the defendants if they had anything to say to Mr. Schmidt; and that Burns stated that he was sorry that it had happened; and appellant did not say anything.

Appellant testified that he went in the Pontiac to the Rose Parade; eleven persons, including Burns, were in the Pontiac; appellant met Burns on December 31st; after they left the parade they were caught in traffic which was going to the Rose Bowl; they asked officers to let them through the road blocks, but the officers replied that it was impossible; one Porter was driving the car, and after they arrived in the Rose Bowl parking area Porter suggested that they stay there until traffic on the highway had cleared; at the time the Pontiac was parked, the Buick was not there; appellant,

Burns and two of the other boys got out of the Pontiac; Burns walked toward the Rose Bowl; appellant and the other boys walked in another direction; when appellant and the two boys returned to the Pontiac, someone mentioned that something under the Pontiac was scraping; he looked under the rear of the car, and when he straightened up he saw the police car; at that time he first noticed the Buick; he did not know where Burns was and he had not seen him since he walked toward the Rose Bowl; when he saw the police officers, he did not call to anyone—his lips move frequently due to nervous tension. He testified further that Burns did not state in his presence that he was not going to take the beef himself, or that appellant broke the window of the Buick with a rock and unlocked the door, or that appellant had told Burns to get in the Buick and see what he could find and appellant would stand beside the Buick.

Appellant contends, as above stated, that the verdict is against the evidence and the law. He argues that one of the essential elements of burglary of a vehicle is that the doors of the vehicle must have been locked; and that the evidence was insufficient to support a finding that the doors of the Buick were locked. Section 459 of the Penal Code provides: "Every person who enters any . . . vehicle as defined by said [vehicle] code *when the doors of such vehicle are locked* . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." (Emphasis added.) In order to prove said charge of burglary, it was necessary to prove that the doors of the Buick were locked, immediately prior to the time Burns entered the Buick. The owner of the Buick did not testify. No one testified that the doors were locked at the time the Buick was left at the parking place or that they were locked at any time. There was testimony of an officer, over the objection of appellant, to the effect that, in the presence of appellant, Burns said that appellant broke the window with a rock and unlocked the window. The officer also testified that appellant promptly replied to Burns' statement by saying that Burns was lying. Presumably said testimony of the officer was received for the purpose of showing the demeanor of appellant in the face of an accusatory statement. Appellant's prompt denial of Burns' accusatory statement was not, of course, demeanor which would amount to an admission that the doors were locked, and it was not demeanor from which an inference of

guilt could be drawn. In *People* v. *Smith*, 25 Cal.App.2d 241, it was said at page 247 [77 P.2d 277], that an accusatory statement "is never admissible as proof of any fact, but solely for the purpose of showing the demeanor and actions, if any, of the defendant in the face of an accusatory statement; and when such accusatory statement is promptly denied by the defendant, it is inadmissible for any purpose." The further testimony of an officer that the owner of the Buick said, in the presence of both defendants, that he left all the doors and vent wings in a locked condition was not evidence that the doors and wings were locked. The alleged statement of the owner was not made by him as a witness, and he was not subject to cross-examination. The court advised the jury, immediately after the testimony of the officer had been given, that the statement of the owner was not to be considered as evidence of the truthfulness of the owner's statement, but it was to be considered only in the nature of an accusatory statement. As stated above, the appellant did not say anything when the officer asked him if he had anything to say to the owner. The statement of the owner did not call for a reply by appellant. It was not an accusation against appellant and his silence was not an admission that the doors were locked, and it was not indicative of consciousness of guilt. (The position of appellant was different from that of Burns who had entered the Buick.) The fact that the windwing was broken and glass was on the front seat was not proof that the doors of the Buick were locked, and an inference could not be drawn from that fact that the doors were locked. There was no evidence as to the condition of the windwing at the time the Buick was left at the parking place—the broken condition could have been caused in various ways not related to the alleged burglary. The evidence was insufficient to support a finding that the doors of the Buick were locked.

■ Appellant contends further that the court erred in giving the following instruction: "The law absolutely forbids you to consider a confession in determining the innocence or guilt of a defendant unless the confession was voluntarily made, and although *the court has admitted evidence tending to show that defendant made a confession,* you must disregard the asserted confession entirely unless you . . . conclude that the alleged confession not only was made, but was voluntary. . . ." (Italics added.) The italicized portion of the instruction implies that there was evidence tending to show

that a confession was made. There was no evidence tending to show that appellant made a confession. The instruction was inapplicable to appellant, and as to him it was prejudicially erroneous.

In view of the above conclusions, it is not necessary to determine other contentions of appellant.

The judgment and the order denying the motion for a new trial are reversed.

Shinn, P. J., and Vallée, J., concurred.