Filed 1/15/14  P. v. Telles CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NOLAN RYAN TELLES,<br><br>Defendant and Appellant. | C071441<br><br>(Super. Ct. Nos. 10F3040 & 12F1039) |

A jury found defendant Nolan Ryan Telles guilty of several crimes, and found he had a prior strike (first-degree burglary) and committed certain offenses while on bail. The trial court sentenced defendant to prison for eight years and eight months.  Defendant timely appealed.

On appeal, defendant first contends the trial court erred in joining two of his cases and denying his motion to sever certain counts.  He further claims prejudicial evidence that he had been in jail was introduced, no substantial evidence supports one count, the

1

trial court erred in denying his motion to strike the strike, and error in the abstract of judgment, a point conceded by the People. We reverse Count 2 for lack of evidence and modify the sentence to account for this reversal.

**FACTS**

At trial, 10 counts were alleged against defendant; we describe them grouped by incident. He was convicted except as explicitly noted.

### 1. *December 27, 2011 (Caterpillar Road incident)*

Count 9 alleged knowing receipt of stolen property (mail) (Pen. Code,[1] § 496) and Count 10 alleged possession of a burglary tool (*id.*, § 466).

Three owners of businesses on Caterpillar Road testified that on December 27, 2011, a peace officer returned mail to them, some opened, and one owner testified his mailbox was locked. Redding police officer Douglas Moore testified that that morning he stopped defendant's car and found the stolen mail, which he returned to the addressees that day, and also found a "cat's paw pry tool[,]" and saw scratch marks on one mailbox, which "looked like it had been pried open[,]"; the marks "appeared to match up" with the cat's paw. There was evidence showing the cat's paw had legitimate uses, and the jury acquitted on Count 10.

### 2. *Early morning of February 20, 2012 (Fralik incident)*

Count 6 alleged vehicle burglary (§ 459) and Count 7 alleged knowing receipt of stolen property (§ 496). The People dismissed Count 6 before trial.

Redding police officer Joseph Labbe testified that at about 3:00 a.m. on February 20, 2012, he saw defendant going through paperwork in a dumpster by a motel. Defendant said the paperwork was not his. It included, "Social Security cards, some checks, paperwork you would commonly find inside of an automobile, insurance

_____

[1] Further undesignated statutory references are to the Penal Code.

2

paperwork and things of that nature." The Social Security card had the name "Charles Fralik" on it. Labbe also found pepper spray, a folding knife, and a professional grade camera. Fralik's car window had been pried open. The People tried to prove property had been stolen from Fralik, by testimony that Fralik "positively identified" the property, but the trial court struck that testimony as hearsay, and the jury acquitted on Count 7.[2]

### 3. *Afternoon of February 20, 2012 (YMCA incident)*

Counts 1 through 5 and Count 8 alleged crimes committed at the YMCA on the afternoon of February 20, 2012.

James Johnson testified he went to the YMCA in the early afternoon on February 20, 2012, and put his wallet and keys in a bag in a locker, which he failed to lock. Later, the bag was gone. At about 10:30 p.m., he was called by the Redding police, and he retrieved his belongings the next day, except for his keys.

Donovan Lee testified he went swimming at the YMCA that afternoon, driving his friend Jennifer Greene's black Honda Accord. When he returned to his locker, the car keys were gone, as was the car, which contained his telephone and wallet. Late that night, he was called by the police and he and Greene drove to where the car was, but only one of his credit cards was found, and his telephone had been smashed. Greene testified some of her cash was missing from the car.

Megan McCauliffe, a YMCA employee who had known defendant for about ten years, saw him at the facility that morning, around 11:00 a.m., wandering around, and saw him enter and leave for the parking lot a couple of times. Defendant's father was a member and volunteer, and, "It wasn't abnormal for [defendant] to come in looking for

_____

[2] The prosecutor knew Fralik might be unavailable to support those charges because of a military deployment, but represented to the court that he could prove the charges through Fralik's sister. It appears neither witness could be produced for trial, leading to the dismissal of Count 6, and the ultimate acquittal on Count 7.

his dad." Defendant told her "he had just gotten out of jail that morning." He left around 4:00 p.m., through a side door, and she watched him get into a black Honda Accord that she did not think was his.

Daniel Lewandowski, a YMCA employee who had known defendant since high school, saw him around 1:00 p.m., and thought he was there to see his father. However, defendant "was kind of wandering around the facility a little bit that day." After a couple of hours, defendant left in a black Honda Accord.

Redding police officer Steve Tumelson testified that at 10:23 p.m., on February 20, 2012, he saw Greene's Honda, recognized it as having been reported stolen, and pulled it over. Defendant was the driver. He told Tumelson he had been looking through lockers at the YMCA that day and took the Honda's car keys from a locker, located the car in the parking lot by pushing the key fob until "lights flashed and the alarm chirped[,]" and took the car. Defendant said he had tossed items out of the Honda as he drove. Defendant identified a pair of pants in the back seat, and inside a pocket of this pair of pants, Tumelson found "a yellow piece of paper that I recognized as a jail release form with [defendant's] information as far as his driver's license, date of birth and a court date." Tumelson also found a gym bag with James Johnson's driver's license. Officer Todd Rowen testified he also found a wallet and jacket in the gym bag. Officer Matt Stoker testified he found "What was left" of a mobile telephone that "had been basically torn apart." Defendant had $38 on his person, and told Stoker that was all that was left of money he found "in the victim's wallet."

The jury found defendant guilty as charged of all YMCA incident counts, consisting of burglary (of the YMCA) (Count 1, § 459), vehicle burglary (of Greene's Honda) (Count 2, § 459), knowing receipt of stolen property (Johnson's and Lee's property) (Counts 3 and 5, § 496), vehicle theft (of Green's Honda) (Count 4, Veh. Code, § 10851), and vandalism (smashing Lee's telephone) (Count 8, § 594, subd. (a)(2)(A)).

4

In a bifurcated proceeding, the jury found defendant committed the YMCA incident while on bail from the Caterpillar Road incident (§ 12022.1), and that he had a prior serious felony conviction (first degree burglary) (§ 1170.12). No issues about the procedures or evidence regarding those jury findings are raised on appeal.

## DISCUSSION

### I

### *Consolidation and Denial of Severance*

Defendant first contends the trial court erred in joining two of his cases and denying his motion to sever certain counts. For reasons we will explain, we disagree.

A.     *Procedural History*

Complaint No. 12F0323 charged defendant with the Caterpillar Road incident, alleging that on December 27, 2011, he knowingly received stolen mail belonging to several victims, and possessed burglary tools. This complaint also alleged defendant had a serious prior felony and strike (the first-degree burglary for which he was on probation) and committed the offenses while he was on bail.

Complaint No. 12F1039 alleged crimes committed on February 20, 2012, specifically, the YMCA and Fralik incidents described *ante*, and alleged defendant had committed those crimes while released on bail.

Defendant waived his right to preliminary hearings, and the trial court deemed the two complaints informations. The People moved to join the two cases for trial, alleging they involved the same class of crime (all theft related). Defendant opposed the motion, conceding the charges were "statutorily joinable" but contending it would be prejudicial to try the cases together.

After the People filed a 12-count consolidated information, defendant unsuccessfully moved to sever the two counts alleged to have occurred in the early morning of February 20, 2012 (Fralik incident), from the counts alleged in the afternoon of that same day (YMCA incident), and those committed on December 27, 2011

5

(Caterpillar Road incident). The next day, the People filed the 10-count "first amended consolidated information" on which defendant was tried.

The trial court found consolidation proper and denied the motion to sever, because of "significant" cross-admissibility of evidence of intent (Evid. Code, § 1101, subd. (b)), the fact none of the evidence was inflammatory, the fact all the charges were "theft type of crimes" and the fact that this was not a case where the evidence was comparatively weaker as to some charges than others.

B. *Analysis*

Section 954 allows the People to join in one pleading "different offenses connected together in their commission," or "of the same class of crimes or offenses[.]" There is no question that all of the charges were theft related, as the trial court found.

On appeal from a judgment following the denial of a motion to sever, a defendant must show that the denial of severance was an abuse of discretion, or that the resulting trial resulted in a denial of due process. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 408-409; *People v. Arias* (1996) 13 Cal.4th 92, 127.) An abuse of discretion may occur when evidence of the different crimes would not be cross-admissible in separate trials, some charges are unusually inflammatory, a weak case has been joined with a strong case or similar weak cases have been joined in an effort to cumulate their effect, or capital charges are involved in one case. Although absence of cross-admissibility does not mandate severance, its presence generally eliminates any prejudice from a joined trial. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 947-950 (*Jenkins*).) A denial of due process may also occur when evidence of one count is leveraged to obtain conviction on an unrelated count. (See *People v. Grant* (2003) 113 Cal.App.4th 579, 586-594 (*Grant*) [conviction reversed because "the prosecutor erroneously urged the jury to infer that defendant was guilty on count 1 because he was guilty on count 2, and vice versa"].) In such a case, the defendant "must demonstrate a reasonable probability that the joinder affected the jury's verdicts." (*Grant*, *supra*, 113 Cal.App.4th at p. 588.)

6

Evidence that defendant used a cat's paw to pry open a mailbox and steal mail in December 2011 tended to show his intent to steal when he entered the YMCA in February 2012. Further, evidence he knowingly possessed stolen property earlier on the day of the YMCA crimes also tended to show his intent to steal when he entered the YMCA. Thus, when the trial court granted consolidation, and denied severance, there was significant evidentiary cross-admissibility which undermines defendant's claim that the trial court abused its discretion. (See *Jenkins*, *supra*, 22 Cal.4th at pp. 947-950.) The law allows "the least degree of similarity" to be used to show intent for the introduction of uncharged conduct under Evidence Code section 1101, subdivision (b). (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) As the People point out, defendant stole mail, wallets and identity information in each of the three incidents (Caterpillar Road, Fralik vehicle, and YMCA incidents), showing a similar general intent.

Moreover, apart from cross-admissibility, none of the charges were capital charges, none of the evidence on any count was comparatively inflammatory, and there was no showing before trial that strong charges were being used to shore up weak charges. In short, no abuse of discretion occurred.

As for actual prejudice from consolidation, contrary to defendant's view, the evidence at trial, except as to the Fralik counts, was of comparatively equal strength, and the fact the jury acquitted defendant of two counts at trial (including the one remaining Fralik count) shows it was not influenced by evidence on the stronger counts to convict on weaker counts, much less inflamed. As for the Caterpillar Road incident, the jury evidently had a reasonable doubt about whether the cat's paw was actually possessed with the intent to be used as a burglary tool, though the jury convicted defendant of knowingly possessing the stolen mail. All of the YMCA counts resulted in convictions, but the evidence on all of those charges was independently strong. In addition to the testimony of several witnesses, defendant made highly incriminating statements about the YMCA crimes upon his arrest.

7

Defendant makes much of the concluding sentence of the prosecutor's closing argument, to which no objection was interposed, in which the prosecutor argued that "when you take all of these counts and you look at the evidence that was presented yesterday . . . and the fact the defendant was found in possession of all this property on the different occasions, I'm confident that you will find the defendant guilty of all the charges." In context, we agree with the People that this was an argument for conviction on all counts based on the strength of all the evidence. The prosecutor did not argue that a finding of guilty on one or more counts compelled a finding of guilty on others. (Cf. *Grant*, *supra*, 113 Cal.App.4th at p. 589.)

In short, defendant has not shown that consolidation actually caused prejudice.

II

*Evidence Code section 352*

During trial, there was testimony that defendant had been in jail prior to the YMCA incident. One YMCA employee testified defendant told her "he had just gotten out of jail that morning." Redding police officer Tumelson testified that in defendant's pants he found "a yellow piece of paper that I recognized as a jail release form" with defendant's information. No objections were interposed.

On appeal, defendant contends this evidence should have been excluded as too prejudicial (Evid. Code, § 352) and that trial counsel's failure to object reflected ineffective assistance of counsel.

The failure to object to evidence normally forfeits any claim it should have been excluded. (Evid. Code, § 353, subd. (a) [objections must be timely and specific]; see *People v. Holford* (2012) 203 Cal.App.4th 155, 168-170.) Here, the claim is forfeited, and we find no ineffective assistance of counsel.

A coherent appellate claim of ineffective assistance of counsel must demonstrate that trial counsel acted below professional norms, including that counsel had no rational tactical purpose for so acting, and that the error caused prejudice. (See *People v.*

8

*Ledesma* (1987) 43 Cal.3d 171, 217-218.)  "In this instance, defendant's argument merely presumes counsel's failure to object fell below an objective standard of reasonableness and she was prejudiced thereby.  Defendant also neglects to argue how there could be no satisfactory explanation for counsel's failure to object.  This will not suffice."  (*People v. Mitchell* (2008) 164 Cal.App.4th 442, 467.)

Here, trial counsel could have easily concluded, as do we, that the references to jail were trivial, particularly given the charges and evidence suggesting that defendant had committed additional crimes and had extensive contact with the police earlier that same day.  Whether or not the jury found beyond a reasonable doubt that defendant was involved in the Fralik incident on the morning of February 20th, it still heard evidence that he was contacted by police and connected to a vehicle burglary earlier on the same day the references to his having recently been jailed were made.  The fact that defendant had been in jail at some point as a result of the multiple police contacts described by the witnesses at trial would have come as no surprise to this jury.  This conclusion--that the reference was trivial and not likely to receive undue attention by the jury unless it was emphasized by objection--would provide a rational tactical reason for trial counsel's decision not to object.  It also shows a lack of prejudice from the failure to object.  *Either* of these two things--a rational tactical reason or lack of prejudice--is fatal to defendant's claim.  Here we have both.

Further, we point out that the jury was not actually inflamed by this evidence, as shown by the fact that it acquitted defendant of two charges.  The jury diligently applied the presumption of innocence and held the People to their burden of proof beyond a reasonable doubt.  Accordingly, defendant has not shown ineffective assistance of trial counsel.

9

# III

## *Evidence of Vehicle Burglary*

As the jury was instructed, section 459 requires entry into a *locked* vehicle with the prohibited intent to establish burglary. (§ 459; see *In re Young* (1996) 49 Cal.App.4th 861, 863.) Defendant contends no substantial evidence shows Lee locked Greene's Honda Accord before going into the YMCA, and therefore he cannot be guilty of vehicle burglary (Count 2). We agree.

"We review the whole record in a light most favorable to the judgment to determine whether it contains substantial evidence, i.e., evidence that is credible and of solid value, from which a rational trier of fact could find beyond a reasonable doubt that the accused committed the offense." (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 859; see *People v. Barnes* (1986) 42 Cal.3d 284, 303-304.)

Defendant relies heavily on *People v. Burns* (1952) 114 Cal.App.2d 566. In that case the owner did not testify, and the court concluded, "The fact that the windwing was broken and glass was on the front seat was not proof that the doors of the Buick were locked, and an inference could not be drawn from that fact that the doors were locked." (*Burns*, *supra*, 114 Cal.App.2d at pp. 569-570.) The People reply that *Burns* was criticized by *People v. Rivera* (2003) 109 Cal.App.4th 1241 (*Rivera*). *Rivera* rejected the view that the fact a window was recently broken could not support an inference that the car was locked: "It is not rational to conclude someone would break a car window in the early morning hours in order to enter a car that is unlocked." (*Rivera*, *supra*, 109 Cal.App.4th at p. 1244.)

*Rivera* demonstrates that circumstantial evidence and reasonable inferences therefrom may supply substantial evidence, depending on all of the facts in the record bearing on an issue in dispute. Here, defendant told the arresting officer he pushed the stolen key fob until "lights flashed and the alarm chirped[,]" allowing him to locate and take the Honda. However, the People presented no evidence about how the alarm system

10

and key fob functioned with this particular car, nor did the defense. There was no evidence that the fact the fob "chirped" when pushed meant the car doors were *locked*. There was no evidence as to which button on the fob (lock, unlock, or other) was pushed. Nor did the prosecutor ask Lee how the fob functioned, whether he had locked the car that day before going into the YMCA, nor even whether he habitually locked the car, which might have supported a rational inference that he did so on this occasion.

"Evidence is sufficient to support a conviction only if . . . it "'reasonably inspires confidence'" . . . and is 'credible and of solid value.'" (*People v. Raley* (1992) 2 Cal.4th 870, 891.) Because the prosecutor did not elicit solid testimony, nor even enough evidence to support a reasonable inference, that the car was locked when defendant accessed it, we conclude no substantial evidence supports Count 2.

Accordingly, the conviction on count 2 is reversed for lack of substantial evidence.

This requires us to lift the stay (§ 654) on the vehicle theft charge (Count 4, Veh. Code, § 10851) imposed by the trial court. For the reasons we now explain in detail, as it is clear what sentence the trial court would give in light of the reversal on Count 2, a remand would be futile and instead we shall modify the sentence.[3] (§ 1260.)

As would be expected in a case with so many counts, the sentencing was somewhat complex. The trial court concluded Counts 1 (burglary of YMCA) and 2 (burglary of Greene's car) were separate offenses, as was Count 9 (knowing receipt of stolen mail). However, Count 3 (knowing receipt of Johnson's property at the YMCA) should be stayed (§ 654) as to Count 1 (burglary of YMCA), and Counts 4 (vehicle theft), 5 (knowing receipt of Lee's stolen car keys from the YMCA locker) and 8 (vandalism of Lee's phone in the car) should be stayed as to Count 2 (vehicle burglary). The court was ultimately persuaded to impose midterms, finding eight years and eight months would be

_____

[3] The parties agreed at oral argument that were we to reverse Count 2, we could properly modify the sentence in the manner we now describe.

11

sufficient to deter defendant's criminality, and if it were not, a greater sentence would not do so.

The trial court set the base term as to each count as the midterm of two years, doubled due to defendant's strike, or four years per count. The court designated Count 1 as the base term, for which a four-year unstayed sentence was imposed, but stayed various counts (§ 654), including Counts 4, 5, and 8, as they related to Count 2, and Count 3 as it related to Count 1, as we described *ante*. The trial court ordered a four-year term for Count 2 to be served concurrently with Count 1, so it did not result in any additional prison time, (although later in the record this was mistakenly referred to as a one-third consecutive midterm sentence of 16 months). The court then ordered a midterm doubled sentence as to Count 3 stayed (§ 654) as it related to Count 1. For Count 9 (knowing receipt of stolen mail) the trial court imposed a consecutive one-third midterm of eight months, doubled for the strike to 16 months, giving a subtotal of five years and four months. The court added two years for the on-bail enhancement, resulting in seven years and four months in case No. 12F1039 (the case tried before this jury). The court then imposed a 16-month consecutive term in case No. 10F3040 (the burglary case for which defendant had been on probation, which was revoked), for a total state prison sentence of eight years and eight months. We modify that sentence by vacating the sentence on Count 2, and lifting the stay as to Count 4, but leaving the stay in place as to Counts 5 and 8, and ordering the sentence for Count 4 to be served concurrently with Count 1. Therefore, defendant's total sentence remains eight years and eight months.

IV

*Motion to Strike Prior*

Defendant invited the trial court to strike his strike, making a *Romero* motion. (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.)

A trial court may strike a felony conviction for purposes of sentencing only when the defendant falls outside the spirit of the Three Strikes law. (*People v. Williams* (1998)

12

17 Cal.4th 148, 161 (*Williams*).)  The trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, 17 Cal.4th at p. 161.)  Striking a strike is a departure from sentencing norms, and we may not reverse the denial of a *Romero* motion unless the defendant shows the decision was "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)  Reversal is justified if the trial court did not know of its discretion or applied improper factors. (*Carmony*, *supra*, 33 Cal.4th at p. 378.)  But where the trial court knew of its discretion, "'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling[.]'" (*Ibid*.)

Defendant argued a lengthy sentence would not serve the purpose of protecting society, and that his behavior was 'governed by his addiction." The People replied that the strike was recent, the present offenses were committed while defendant was still on probation, he had showed no remorse, and he had shown contempt for the law during trial by being late to court and not appearing for the verdicts.

Defendant pleaded guilty (No. 10-03040) to first-degree burglary, imposition of judgment was suspended, and he was placed on three years' probation on June 9, 2010. The earlier probation report states defendant was born in 1988, graduated high school and had nearly obtained an AA degree. He and an accomplice knocked on doors to find an unoccupied house, went into a backyard, defendant opened a door, grabbed a purse, and fled after triggering an alarm. Defendant had been released from jail on his own recognizance the day before, from a separate charge. He was withdrawing from Oxycontin during this time.

The current probation report states defendant was addicted to Dilaudid and methamphetamine. The probation officer's current evaluation of defendant was as follows: "The defendant was spared a state prison commitment and given a grant of formal probation for the 2010 conviction although he was presumptively ineligible pursuant to 462 PC. Since that time, the defendant has continued to steal and pillage from innocent citizens to support his considerable drug habit. He failed to address his substance abuse issue and made no attempt to get a substance abuse evaluation as twice directed by his probation officer."

A petition alleging violation of probation (VOP) had been filed, alleging defendant possessed drugs and drug syringes on May 20, 2011. On August 11, 2011, he admitted the VOP and was reinstated on probation. Other VOPs were filed, but effectively mooted by new charges.

Defendant showed contempt for the judicial system by being late to court after being warned by the court in detail about the need to be on time, and he willfully absented himself in violation of a court order during jury deliberations. And, as noted, defendant was on probation from the strike when he committed new crimes.

The trial court found defendant's age (23) was not a mitigating factor, because it had been used as a mitigating factor to keep him out of prison for the strike, yet instead of taking advantage of that lenity to reform himself, defendant persisted in his criminality, becoming in the trial court's words "a virtual crime wave in this county" and reflecting "an absolute disregard for authority, for the rights of others, for the power and role of the court and the justice system." Given that defendant was still on probation for the strike, he had "abysmal" prospects, nothing but "the most substantial prison sentence" would be appropriate, and "this case really isn't even close to one that would be outside the spirit" of the Three Strikes law.

14

All of the trial court's findings are based on facts supported by the record. Defendant's claims on appeal at best amount to an invitation to reweigh the evidence. For example, he emphasizes his youth, nonviolence, drug addiction, and the short time span in which all of his crimes occurred.

These observations miss the point. By statute, defendant was *presumptively* bound for prison for his strike (see § 462), but he was given a chance to show that he was capable of reform. Defendant violated probation by failing to arrange for drug treatment, possessing drugs, and committing many new felonies. The record supports the view that defendant does not fall outside the spirit of the Three Strikes law. (See *People v. Philpot* (2004) 122 Cal.App.4th 893, 906-907 [general non-violence and drug addiction do not compel granting *Romero* motion].)

In short, it was not an abuse of discretion to deny the *Romero* motion.

V

*Correction of Abstract*

Defendant contends, and the People concede, that there is an error on the abstract of judgment requiring correction. We agree with the parties.

The abstract refers to defendant's strike as a "violent" burglary. But the strike was not charged as a "violent" or so-called "hot" burglary, which requires that someone-- other than any perpetrators--be in the residence. (Pen. Code, § 667.5, subd. (c)(21); see *People v. Singleton* (2007) 155 Cal.App.4th 1332, 1334.) Accordingly, the abstract must be corrected to reflect that the strike was simply a first degree burglary.

15

## DISPOSITION

The judgment on Count 2 is reversed for lack of evidence.  The sentence is modified as described in Part III.  In all other respects, the judgment is affirmed.  The trial court shall prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment consistent with this opinion.


                                                                                DUARTE            , J.


We concur:


        MURRAY          , Acting P. J.


        HOCH            , J.