Filed 5/20/24  In re A.H. CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.H., a Person Coming Under the Juvenile Court Law. | H050952 (Santa Clara County Super. Ct. No. 23JV45941A) |
| THE PEOPLE, Plaintiff and Respondent, v. A.H., Defendant and Appellant. | |

In January 2023, 13-year-old A.H. (appellant) confronted some teenagers with a handgun.  The confrontation resulted in charges against appellant for making criminal threats (Pen. Code, § 422) and brandishing a firearm (Pen. Code, § 417).  The juvenile court found that appellant committed the charged offenses and understood the wrongfulness of his acts (Pen. Code, § 26) (hereafter capacity).  The court placed appellant on probation for six months without wardship.  Appellant has since satisfactorily completed his probationary term.  The petition has been dismissed and all

records pertaining to it have been sealed (Welf. & Inst. Code, § 786[1]), although appellant remains subject to protective orders and outstanding fines and fees.

On appeal, appellant contends the juvenile court's determination that he understood the wrongfulness of his acts was erroneously based on inadmissible incriminating statements he made to a probation officer while in custody. He further contends that even if the juvenile court properly considered his incriminating statements, there is insufficient evidence to sustain the finding that he understood the wrongfulness of his acts. In supplemental briefing, appellant asserts that his defense counsel was constitutionally ineffective for failing to adequately preserve the constitutional challenges to admission of his incriminating statements and this matter should be remanded to allow the juvenile court to properly evaluate the admissibility of his statements under state law.

For the reasons explained below, we affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

A. *The Offenses*

On the afternoon of January 23, 2023,[2] 14-year-old E.B. and his friend rode a bus home from middle school. When they got off the bus, E.B. saw "a group of kids" outside his apartment complex. The group included appellant, who was E.B.'s schoolmate. E.B. and appellant "were not on good terms" because of "problems" E.B. had with another minor who "brought [appellant]" into the situation.[3]

E.B. and his friend walked toward E.B.'s older brother, 16-year-old I.B., and his friend, 15-year-old G.M. Appellant's group and E.B.'s group exchanged "swear words" and variously moved toward and away from each other.

[1] Unspecified statutory references are to the Welfare and Institutions Code.
[2] Unless otherwise indicated, all dates were in 2023.
[3] At appellant's jurisdictional hearing in the juvenile court, E.B. testified that he did not want to be present in court. Further, at the conclusion of his testimony, E.B. asked the court whether he could "remove the charges" against appellant.

2

Appellant was wearing a "fanny pack" across his chest. Appellant walked toward E.B. and unzipped his fanny pack. E.B. saw appellant reach into it for "something black." Appellant pulled a handgun out of his fanny pack "[j]ust a little bit," and E.B. saw the butt of the gun. Appellant racked the gun.

E.B. testified that he was "a little bit" scared when he saw the gun because he thought appellant would remove the gun from the fanny pack and use it. E.B. testified further that a person who was with appellant but did not have a gun, said, " 'You fucking with us, I'm pulling out the straps' " (i.e., a gun). According to E.B., appellant never made any threatening statements toward E.B, his friends, or his family.

E.B.'s older brother, I.B., testified that he was a little scared for himself and E.B. during the incident, because he (I.B.) thought appellant "was gonna shoot." Appellant said some "bad words" (including " 'Little bitch' ") and invited E.B. to fight him with fists by saying, " 'Run my ones.' " Appellant "[s]ounded like he was mad."

I.B. testified that he saw appellant unzip his fanny pack, put his hand inside, and "cock[] the gun while inside the fanny pack." Appellant also "pulled [the gun] up a little bit," about an inch or two. Appellant was about six feet away from I.B. at this point and "was about to approach." I.B. knocked on the window of the apartment complex's office because he "thought something was gonna happen." I.B. said to appellant, " 'You're a pussy. Why you got to bring a gun out like this?' " Appellant replied, " 'That's what you get for messing with us,' " and " 'We're bringing out the guns.' "

G.M. testified that he saw appellant reach inside his fanny pack and heard a "clicking sound," but G.M. did not see a gun. Appellant "was trying to fight" E.B. and said to him, " 'You guys are, like, pussies.' " E.B. "wasn't trying to fight," but I.B. tried to fight with appellant at one point during the incident.

After I.B. knocked on the office window, appellant put his gun away and started walking away. Some people exited the complex's office and said that the police had been called. Appellant left the area before the police arrived. According to I.B., appellant

3

"was walking away already" "after the people came outside." According to G.M., appellant and his group left about "[two] minutes, a minute" after a person came out of the office and said the police were coming.

B. *Juvenile Court Proceedings*

Appellant was nearly 13 years and 10 months old at the time of the January 23 confrontation.

On January 25, the Santa Clara County District Attorney filed a juvenile wardship petition under section 602, subdivision (a) (petition) alleging that appellant criminally threatened I.B. (Pen. Code, § 422, subd. (a); count 1 [felony]) and brandished a firearm (Pen. Code, § 417, subd. (a)(2); count 2 [misdemeanor]).[4]

Through his defense counsel, appellant moved in limine to exclude the testimony of two probation officers "as well as any testimony or reference to conversations with [appellant] in the context of a *Gladys R.*[5] inquiry . . . under *Miranda*.[6]" Counsel contended section 625.6, subdivision (a) (section 625.6(a)) required law enforcement officers to contact counsel prior to administering *Miranda* warnings and interviewing a minor. Counsel further asserted that the exceptions to that requirement for probation officers—as stated in subdivision (d) of section 625.6 (section 625.6(d))—did not apply in this case because "the *Gladys R.* questioning and answers . . . are designed to elicit an incriminating response." Counsel also contended that the failure to contact counsel before a *Miranda* interview "triggers, at a minimum, a voluntariness inquiry." Counsel asserted that the presumptive incapacity of a minor under age 14 (Pen. Code, § 26)

---

[4] Count 1 originally included a second victim. During the contested jurisdictional hearing, the juvenile court granted the district attorney's request to amend count 1 to remove that victim, thereby conforming the allegation to the evidence presented.

[5] In *In re Gladys R.* (1970) 1 Cal.3d 855 (*Gladys R.*), our Supreme Court "conclude[d] that the juvenile court should consider whether a child appreciates the wrongfulness of her conduct in determining whether the child should be declared a ward under section 602." (*Id*. at p. 858.)

[6] *Miranda v. Arizona* (1966) 384 U.S. 436.

4

rendered "problematic" a conclusion that such a minor understood the *Miranda* warnings or any use of the minor's post-*Miranda* statements to prove his capacity to understand the wrongfulness of his conduct.

The juvenile court took appellant's motion under submission, noting that it could "consider all of the evidence presented at a contested jurisdiction[al hearing] for purposes" of determining appellant's capacity under Penal Code section 26.

### 1. Contested Jurisdictional Hearing

At the contested jurisdictional hearing, the juvenile court ruled that the two probation officers could testify subject to appellant renewing his motion to exclude their testimony and moving to strike or preclude consideration of that testimony for purposes of the capacity/*Gladys R.* determination. In turn, the prosecutor presented the testimony of Deputy Probation Officer Gabriel Alcantar and Deputy Probation Officer Cecilia Martinez (along with testimony from E.B., I.B., and G.M. about the confrontation on January 23 (see pt. I.A., *ante*)).

Probation Officer Alcantar testified that on January 24, he met with appellant at the Santa Clara County Juvenile Hall. Alcantar asked appellant questions from a *Gladys R.* questionnaire before administering *Miranda* warnings. As part of the *Gladys R.* questioning, Alcantar asked appellant "whether he knew the difference between doing something that is right and something that is wrong." Appellant said "that it is wrong to hurt people, and that it is right to help people." Later, after Alcantar administered *Miranda* warnings, appellant "elected to not provide a statement regarding the offense."

Alcantar testified that his interview of appellant lasted "approximately 30 to 35 minutes." Given that appellant invoked his *Miranda* rights, the interview focused "primarily on [appellant's] social background." Alcantar opined that appellant "display[ed] an understanding of right versus wrong" based on his responses to the questions on the *Gladys R.* questionnaire. Over defense objections, Alcantar added that, during the interview, he asked appellant "what would happen to him at home if he did

something wrong, like he . . . didn't complete his chores, didn't clean his room." Appellant said that he would "get talked to" or "get punished." Alcantar explained: "So [appellant] acknowledged that [] there's a consequence for some kind of negative action, and so, to me, I believe that displayed an understanding of [] right versus wrong."

In overruling defense objections to Alcantar's testimony, the juvenile court said that capacity is "not an element of the offense. It is not an incriminating response; it is a prerequisite to a finding of wardship." The court observed further, "the statements are not as to the elements of the offense."

Defense counsel responded that appellant's admissions made without *Miranda* warnings and consultation with counsel amounted to incrimination on the capacity issue, in violation of *Miranda* and the Welfare and Institutions Code. The juvenile court disagreed, saying, "I don't see how the questions around capacity are incriminating, and the whole *Miranda* objection is about the right to not incriminate yourself as it relates to the offense." The court deemed counsel's objection "an ongoing objection" and added, "I've already invited you to bring a motion to strike at the end of the testimony."

At the conclusion of Alcantar's direct testimony, defense counsel asked the juvenile court to strike the testimony, stating, "This is a *Miranda* violation. [Appellant] was in custody when this happened." Counsel reiterated that appellant's "responses to these [*Gladys R.*] questions are now being used by the government to incriminate him by being able to continue this prosecution and meet their burden [regarding capacity], which is a secondary element or a secondary component to this prosecution." In response, the juvenile court reiterated that capacity is "a threshold issue; it is not an element of the offense. There are other ways in which the People can prove it." The court denied counsel's motion to strike Alcantar's testimony and invited counsel to "renew [the motion] when we get to the issue of the determination of capacity."

Probation Officer Martinez testified that she met with appellant on January 23 (i.e., the date of the confrontation, and one day before Alcantar interviewed appellant).

6

Martinez was "working as the screening officer at the intake desk in [j]uvenile [h]all when [appellant] was brought in by [the] San Jose Police Department." Martinez explained that, as an intake officer, she meets with the officers delivering a minor to juvenile hall to ensure that a report documenting the alleged crime is properly completed. She then "proceed[s] to process the minor." Martinez uses a risk assessment instrument "to determine whether a minor will be remaining in custody or not." After that, Martinez "would read the minor his or her *Miranda* rights." After the minor signs a document acknowledging the administration and understanding of their *Miranda* rights, Martinez "would proceed to do an interview" regarding the minor's social history and "contact the parents or guardians to notify them of the minor being in custody."

When Martinez met with appellant on January 23, she read appellant his *Miranda* rights and he signed a form acknowledging that fact. Martinez also conducted a *Gladys R.* examination of appellant. When asked by the prosecutor if the *Gladys R.* examination occurred before or after reading appellant his *Miranda* rights, Martinez said, "Most likely it was after." Martinez confirmed that it is "standard practice to read *Miranda* rights prior to giving a[] [*Gladys R.*] examination."

Martinez filled out a *Gladys R.* examination form with appellant. Martinez testified that the purpose of the *Gladys R.* examination questions was "[t]o establish whether the youth understands the difference between right or wrong." When asked by the juvenile court whether the *Gladys R.* form was used for the probation department's "own internal purposes" or "in preparation for something else," Martinez stated, "To be quite honest, I don't know. I just know it is something we have to do for all minors 13 and younger."

During the *Gladys R.* examination, Martinez asked appellant "do you know the difference between doing something that is right and doing something that is wrong?" Appellant responded, "Yes." Defense counsel objected to Martinez's answer on foundational and *Miranda* grounds and moved to strike the testimony. The juvenile court

7

stated that counsel was making "the same objection" as he had made previously during Probation Officer Alcantar's testimony. The court overruled the objection and deemed it "an ongoing objection to this officer's testimony."

Appellant told Martinez that it is "wrong" to "be rude." He also said it is "right" to " '[b]e nice.' " He stated that being rude was wrong " '[b]ecause you should be nice.' " When asked "what happens to you at home if you do something that is wrong," appellant "responded that his phone is taken away or he is grounded." Appellant said he would be " '[s]uspended or sent home' " if he did something wrong at school. Appellant acknowledged that his parents punished him for doing something that they had told him was wrong to do. He also said his parents had told him it was wrong to "[h]it someone." Based on the *Gladys R.* examination, Martinez opined that appellant "understood the difference between right and wrong."

On cross-examination, defense counsel asked Martinez "Why do you read *Miranda* warnings before doing these interviews?" Martinez answered, "It's just my standard practice that I always want to make sure I cover that before I proceed to ask any kind of question," and that was "the way [she had] been trained." Martinez did not know why she was trained to do that and was "not certain . . . what these interviews are going to be used for after [she] conduct[s] them."

Following the testimony of Probation Officer Alcantar and Probation Officer Martinez, defense counsel filed a written motion to suppress appellant's statements made during the *Gladys R.* questioning (motion to suppress). Counsel argued that the interviews were conducted in violation of *Miranda* and section 625.6. Counsel explained, "This motion is the defense's renewal of its [m]otion in [limine] [] and objections during the probation officers' testimony."

Citing *In re Joseph H.* (2015) 237 Cal.App.4th 517 (*Joseph H.*), defense counsel contended "*Gladys R.* questions are designed to elicit an incriminating response" because they are "used by the government [to] establish a minor's capacity to commit crimes

under Penal Code section 26." "Thus, *Miranda* warnings were required prior to conducting a *Gladys R.* interview of [appellant]."

Defense counsel noted in his motion that Probation Officer Alcantar testified he did not read appellant his *Miranda* rights before the *Gladys R.* questioning. Further, regarding Probation Officer Martinez's *Gladys R.* questioning, counsel noted that Martinez "did not exactly remember if she [had] read [appellant] *Miranda* warnings prior to conducting the *Gladys R.* interview" and "was also not certain exactly why she performed the *Gladys R.* interviews but did mention that she conducted the interview in order to show that [appellant] 'knew the difference between right and wrong.' " Counsel also noted that Martinez's *Gladys R.* questionnaire form had been "incorporated into the San Jose Police [r]eport and was disclosed to the defense by the prosecution."

Relying on section 625.6, defense counsel argued that "Martinez was acting as an agent of law enforcement and therefore was required to contact counsel for [appellant] prior to the interview." Counsel maintained that Martinez "was not performing her duties as a [probation officer] under [section] 628 but rather was acting as an agent of law enforcement. This interview was used by law enforcement in the prosecution of [appellant] and not for purposes of detention. Thus, such an interview does not fall within the exception under [section] 625.6(d) and required contacting counsel prior to interviewing [appellant]." Counsel "move[d] to exclude the contents of [the *Gladys R.*] interview for violating [section] 625.6. In the alternative, such a violation should trigger [the juvenile court] to conduct [a] voluntariness inquiry of [appellant]'s statements to [P]robation [O]fficer Martinez."

In addition, defense counsel contended that "even if the [c]ourt finds that Probation Officer Martinez's interview fell within the exceptions under [section 625.6(d)], the prosecution should be estopped from using the interview in their case-in-chief and [appellant] should have immunity from the government using such interview against him." Counsel asserted, "It cannot be said that minors under [14] know the

9

consequences of doing a *Gladys R.* interview with probation without being advised by counsel prior to the interview. A minor cannot be expected to appreciate the nuances of *Miranda*." Counsel maintained, "The government is circumventing [] section 625.6," and alternatively, "the government cannot show that [appellant]'s statements were voluntarily made." Counsel urged the court to "exclude any testimony and reference to the *Gladys R.* interviews and strike any testimony of [P]robation [O]fficer Alcantar and Martinez."

Later, after the prosecutor rested the People's case-in-chief, defense counsel additionally moved to dismiss the petition based on his "ongoing motion to strike" the probation officers' testimony (§ 701.1) (motion to dismiss). In response, the juvenile court stated a tentative ruling, indicating it was inclined to strike Probation Officer Alcantar's testimony but not Probation Officer Martinez's testimony concerning appellant's capacity. The court explained that "the interview with Probation Officer Martinez was part of the intake process that happens when a minor is brought to juvenile hall. . . . When Probation Officer Martinez testified, she indicated that her reading of *Miranda* and her interview on capacity w[ere] part of that intake process. And what convinced the Court that that was credible testimony as to her practice and custom was the fact that she mentioned the risk assessment instrument." The court rejected defense counsel's argument that Martinez was acting as an agent of law enforcement during the normal juvenile hall intake process.

In opposition to appellant's motion to suppress the probation officers' testimony, the prosecutor argued that "the element of capacity does not go to guilt or innocence, and therefore *Miranda* protections do not apply as there is no custodial interrogation and no incriminating facts being elicited by the [*Gladys R.*] questionnaire." The prosecutor urged the court to admit both probation officers' testimony because "*Miranda* warnings are not required prior to administering the [*Gladys R.*] questionnaire."

10

Regarding appellant's motion to suppress, the juvenile court noted that it had not found any case law directly addressing whether questioning on capacity without administering *Miranda* warnings is proper. Given this, the court ruled: "I am going to strike Probation Officer Alcantar's testimony regarding the capacity issue. My ruling is to keep Probation Officer Martinez's testimony as it stands for the reasons I've stated in the explanation of my tentative." After the court ruled, defense counsel made no request for a further voluntariness determination regarding appellant's statements to Probation Officer Martinez.

Regarding appellant's motion to dismiss the petition, defense counsel argued that the prosecution had failed to meet its clear and convincing evidence burden to show appellant's capacity to commit the offenses.

The prosecutor responded: "What's important here is that it's not just the testimony we heard from Probation Officer Martinez that comes into play, but it's also the facts of the case which show that [appellant] had an understanding that his behavior, specifically showing a gun to another individual, was wrong." The prosecutor noted that appellant "hid the gun once an adult came outside" the office and the surveillance footage viewed by the juvenile court "demonstrated that [appellant] immediately ran away from the scene."[7] The prosecutor concluded her argument saying: "And that's just the facts of the case which show capacity. It's also the People's position that Probation Officer Martinez'[s] evaluation of minor also comes into play. And it was her belief that [appellant] understood right from wrong and was of normal maturity, enough to . . . be detained."

After hearing arguments from defense counsel and the prosecutor on the motion to dismiss, the juvenile court denied the motion, finding there was clear and convincing

---

[7] Defense counsel had introduced into evidence (as exhibit B) portions of surveillance footage depicting the incident. We granted appellant's motion to transmit exhibit B to this court and have reviewed that footage.

11

proof appellant understood the wrongfulness of the charged acts. The court reiterated that it had not considered Probation Officer Alcantar's testimony in making this finding.

The court stated the evidence proved appellant had a gun in his fanny pack, unzipped the fanny pack, held or showed the gun, and put it back in the fanny pack. The court explained that case law allowed it to infer from the evidence presented "the wrongfulness of [appellant's] conduct." The court continued: "So what this [c]ourt has is not only the testimony of Probation Officer Martinez, but also the ability to draw that inference. And I believe it's a reasonable inference to draw and am going to find that the People have met the burden of proving by clear and convincing evidence that [appellant] understood the wrongfulness of [his] conduct."

After considering closing arguments on the evidence, the juvenile court found true the allegations in count 1 (criminal threats) and count 2 (brandishing a firearm). The court also found count 2 to be a misdemeanor. Defense counsel requested that the juvenile court exercise its discretion under section 700.3 to reduce count 1 to a misdemeanor. The court denied that request and found the criminal threats charge to be a felony. Nonetheless, the court invited counsel to reassert his request at the time of disposition.

### 2. Dispositional Hearing

At a dispositional hearing held on April 11, the juvenile court placed appellant on six months' probation without wardship (§ 725) in the custody of his parents and with various terms and conditions, including a prohibition on firearm possession until appellant turned 30 years old and payment of a $110 restitution fine. In addition, the court issued four restraining orders against appellant that will expire in April 2025.

The juvenile court took under submission appellant's renewed motion to reduce count 1, stating, "I am going to set a review in six months, prior to the termination of wardship, and if things have worked out well, that motion will be granted at that time."

12

Appellant appealed from the juvenile court's jurisdictional findings, dispositional order, and judgment.[8]

## II. DISCUSSION

Appellant raises two claims of error in his opening brief. In his first claim, appellant contends the juvenile court erred in applying section 625.6 "because the [probation] officers were required to ensure he consulted with counsel prior to questioning him pursuant to *Gladys R.* under subdivision (a) of section 625.6" (italics omitted) and the juvenile court's reliance on the exception in section 625.6 "constituted legal error." He argues that the *Gladys R.* questioning here amounted to custodial interrogation and "[t]here simply isn't evidence to place [P]robation [O]fficer Martinez's conduct within any exception to the rule that she ensure appellant has an opportunity to speak to his attorney."

Appellant further contends that the failure to ensure consultation with counsel "rendered his statements in response to the *Gladys R.* interview unintelligent and, by implication, involuntary for purposes of the Fifth Amendment's privilege against self-incrimination." Appellant concedes his "[d]efense counsel did not specifically object on the basis that appellant's statements were involuntary." Nevertheless, he asserts, "Because the juvenile court ultimately determined a *Gladys R.* interview is not intended

---

[8] Appellate counsel informed this court that the juvenile court on October 10 granted appellant's motion to reduce count 1 to a misdemeanor. Further, the juvenile court dismissed the petition and appellant's probation. The juvenile court also ordered the records pertaining to the dismissed petition sealed under section 786. The juvenile court informed appellant that "this dismissal does not relieve [him] of the duty to pay fines, fees, or restitution, and any issued restraining order(s) remain in effect as previously ordered."

Appellant and the Attorney General agree that this appeal is not rendered moot by the juvenile court's dismissal of the petition and sealing of records. We concur because appellant remains subject to the juvenile court's restraining orders until April 2025 and liable for payment of fines, fees, and restitution. (See *In re Dana J.* (1972) 26 Cal.App.3d 768, 771.)

to elicit incriminating statements for purposes of the Fifth Amendment privilege, appellant urges this [c]ourt to find any further objection by defense counsel on the basis that appellant's statements were involuntary would have been futile and were therefore not necessary." Regarding the merits of his contention, appellant claims that the record fails to show he knowingly, voluntarily, and intelligently waived his *Miranda* rights. He argues further that even if there is sufficient proof that *Miranda* warnings were provided by Probation Officer Martinez, "his participation in the *Gladys R.* interview was not intelligent, and therefore involuntary as a matter of law." Regarding prejudice, appellant contends the alleged "federal errors" (boldface omitted) warrant reversal under the harmless error standard set forth in *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).

In his second claim of error, appellant asserts that even considering Probation Officer Martinez's testimony, the evidence is legally insufficient to sustain the juvenile court's finding of capacity under Penal Code section 26.

The Attorney General responds that neither section 625.6 nor *Miranda* applied to the *Gladys R.* questioning because appellant was not subjected to custodial interrogation. Moreover, there was no violation of section 625.6(a) because the exception stated in section 625.6(d) applied and, regardless, suppression of evidence is not an available remedy for a violation of section 625.6.

Additionally, the Attorney General contends appellant forfeited his *Miranda* claims by not objecting adequately on those grounds in juvenile court. The Attorney General further contends that even if appellant's *Miranda* claims were preserved for appellate review, those claims are meritless because appellant fails to show that Probation Officer Martinez did not administer *Miranda* rights before her *Gladys R.* questioning or that appellant's waiver of those rights was not knowing and voluntary. The Attorney General asserts further that any error in admitting appellant's *Gladys R.* statements was harmless beyond a reasonable doubt.

14

Regarding appellant's sufficiency of the evidence claim, the Attorney General contends there is ample evidence establishing that appellant appreciated the wrongfulness of his acts.

After filing a reply brief, appellant filed a supplemental opening brief. In his supplemental brief, appellant contends that if we deem his *Miranda* claims unpreserved for appellate review, his defense counsel rendered ineffective assistance of counsel in failing to adequately preserve those claims for appeal. In addition, appellant argues that we should remand this matter for further proceedings under section 625.6, subdivision (b), and for an evaluation of the voluntariness of his participation in the *Gladys R.* interview with Probation Officer Martinez.

The Attorney General responds that appellant has not demonstrated deficient performance by defense counsel or prejudice and remand for reevaluation of the admissibility of appellant's *Gladys R.* statements is unwarranted.

A. *Legal Principles*

1. Penal Code Section 26 and Sufficiency of Evidence

Penal Code section 26 provides in relevant part: "All persons are capable of committing crimes except those belonging to the following classes: [¶] One--Children under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness."

"[F]or a section 602 petition to be sustained, the People must prove by clear and convincing evidence that the minor appreciated the wrongfulness of the charged conduct at the time it was committed." (*In re Manuel L.* (1994) 7 Cal.4th 229, 232; see *Gladys R.*, *supra*, 1 Cal.3d at p. 862.) "[C]riminal capacity is not an element of the offense and thus is not the type of fact" that must be proved beyond a reasonable doubt. (*Manuel L.*, at p. 238.) "In determining capacity pursuant to [Penal Code] section 26, the juvenile court must consider the child's age, experience, and understanding." (*Joseph H.*, *supra*, 237 Cal.App.4th at p. 539.)

15

Regarding the sufficiency of evidence proving capacity, "[t]he test on appeal is whether substantial evidence supports the conclusion of the trier of fact. [Citations.] We review the entire record in the light most favorable to the judgment and affirm the trial court's findings that the minor understood the wrongfulness of his conduct if they are supported by substantial evidence--that is, evidence that it reasonable, credible, and of solid value--from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof." (*Joseph H.*, *supra*, 237 Cal.App.4th at p. 538.) "[W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996 (*O.B.*).)

### 2. Section 625.6

Section 625.6(a) states: "Prior to a custodial interrogation, and before the waiver of any *Miranda* rights, a youth 17 years of age or younger shall consult with legal counsel in person, by telephone, or by video conference. The consultation may not be waived." (Italics added.)

Subdivision (b) of section 625.6 directs that "[t]he court shall, in adjudicating the admissibility of statements of a youth 17 years of age or younger made during or after a custodial interrogation, consider the effect of failure to comply with subdivision (a) and, additionally, shall consider any willful violation of subdivision (a) in determining the credibility of a law enforcement officer under [s]ection 780 of the Evidence Code."

Section 625.6(d) provides: "This section does not require a probation officer to comply with subdivision (a) in the normal performance of the probation officer's duties under [s]ection 625, 627.5, or 628."[9]

In *In re Anthony L.* (2019) 43 Cal.App.5th 438, the Court of Appeal held that, given the " 'Truth-in-Evidence' " provision of the California Constitution (Cal. Const., art. I, § 28, subd. (f)(2)), "[s]ection 625.6 does not authorize a court to exercise its discretion to exclude statements if those statements are admissible under federal law." (*In re Anthony L.*, at p. 450; see also *People v. Lessie* (2010) 47 Cal.4th 1152, 1170.)

### 3. *Miranda* and Voluntariness

For purposes of *Miranda*, " 'interrogation' " means "express questioning" or "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (*Rhode Island v. Innis* (1980) 446 U.S. 291, 301, fn. omitted; see also *People v. Elizalde* (2015) 61 Cal.4th 523, 530–540 [holding that jail

---

[9] Section 625 governs the temporary custody of a minor without a warrant, including when a "peace officer" "has reasonable cause for believing that such minor is a person described in [s]ection 601 or 602."

Section 627.5 requires probation officers dealing with minors taken into temporary custody to "immediately advise the minor and his parent or guardian that anything the minor says can be used against him and shall advise them of the minor's constitutional rights, including his right to remain silent, his right to have counsel present during any interrogation, and his right to have counsel appointed if he is unable to afford counsel."

Section 628, subdivision (a)(1) provides in relevant part: "Upon delivery to the probation officer of a minor who has been taken into temporary custody . . ., the probation officer shall immediately investigate the circumstances of the minor and the facts surrounding their being taken into custody and shall immediately release the minor to the custody of their parent, legal guardian, or responsible relative unless it can be demonstrated upon the evidence before the court that continuance in the home is contrary to the minor's welfare and one or more [stated] conditions exist," including that "[c]ontinued detention of the minor is a matter of immediate and urgent necessity for the protection of the minor or reasonable necessity for the protection of the person or property of another" (*Id*., subd. (a)(1)(A)) or "[t]he minor is likely to flee the jurisdiction of the court" (*Id*., subd. (a)(1)(B)).

17

classification interviews may constitute custodial interrogation for purposes of *Miranda*].) "[S]tatements made by a defendant subject to custodial interrogation are inadmissible (for certain purposes) unless the defendant was 'warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.' [Citations.] 'The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.' " (*People v. Krebs* (2019) 8 Cal.5th 265, 299 (*Krebs*).)

"Independent of whether a defendant's rights under *Miranda* were observed, his or her statements may not be admitted unless they were voluntary. 'The court in making a voluntariness determination "examines 'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession." ' [Citation.] The prosecution bears the burden of proof and must show 'by a preponderance of the evidence the statements were, in fact, voluntary.' " (*Krebs*, *supra*, 8 Cal.5th at p. 299.) "Admissions and confessions of juveniles require special caution, and courts must use special care in scrutinizing the record to determine whether a minor's custodial confession is voluntary." (*Joseph H.*, *supra*, 237 Cal.App.4th at pp. 533–534.)

"In reviewing *Miranda* claims, we 'accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if they are substantially supported. [Citations.] However, we must independently determine from the undisputed facts, and those properly found by the trial court, whether the challenged statement was illegally obtained.' [Citations.] We review *Miranda* claims under federal constitutional standards." (*People v. Johnson* (2022) 12 Cal.5th 544, 578.)

The *Chapman* harmless-error test applies to erroneous admission of statements obtained in violation of *Miranda* and involuntary statements. (See *People v. Moore* (2011) 51 Cal.4th 1104, 1129; *People v. Neal* (2003) 31 Cal.4th 63, 86; *People v. Cunningham* (2001) 25 Cal.4th 926, 994; see also *Joseph H.*, *supra*, 237 Cal.App.4th at

18

p. 532.)  An appellate court "has the power to review the record *de novo* in order to determine an error's harmlessness.  [Citations.]  In so doing, it must be determined whether the State has met its burden of demonstrating that the admission of the confession . . . did not contribute to" the fact finder's decision against the defendant. (*Arizona v. Fulminante* (1991) 499 U.S. 279, 295–296; see also *Neder v. United States* (1999) 527 U.S. 1, 18  ["Is it clear beyond a reasonable doubt that a rational [fact finder] would have [reached the same result] absent the error?"].)

### 4.  Ineffective Assistance of Counsel

"To make out a claim that counsel rendered constitutionally ineffective assistance, 'the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms.  Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.' "  (*People v. Hoyt* (2020) 8 Cal.5th 892, 958; see also *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)

A court can reject a claim of ineffective assistance of counsel if the defendant fails to establish either element of the *Strickland* standard.  (See *Strickland*, *supra*, 466 U.S. at p. 687; *People v. Kirkpatrick* (1994) 7 Cal.4th 988, 1008, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

B.  *Analysis*

We need not decide whether the admission of Probation Officer Martinez's testimony regarding appellant's statements violated section 625.6 or the constitutional protections afforded appellant by the Fifth and Fourteenth Amendments.  Even assuming arguendo that the juvenile court should have eschewed Martinez's testimony when deciding the capacity issue, the admission of that testimony was harmless beyond a reasonable doubt under *Chapman*.  Disregarding Martinez's testimony, the remaining

19

evidence demonstrates the juvenile court would have reached the same result regarding appellant's capacity.

"Although a minor's knowledge of wrongfulness may not be inferred from the commission of the act itself, 'the attendant circumstances of the crime, such as its preparation, the particular method of its commission, and its concealment' may be considered. [Citation.] Moreover, a minor's 'age is a basic and important consideration [citation], and, as recognized by the common law, it is only reasonable to expect that generally the older a child gets and the closer [he] approaches the age of 14, the more likely it is that [he] appreciates the wrongfulness of [his] acts.' " (*People v. Lewis* (2001) 26 Cal.4th 334, 378 (*Lewis*).) Further, a minor's "flight from the scene" may provide proof that the minor "knew the wrongfulness of his act." (*Id*. at p. 379.)

Appellant was about two months shy of his fourteenth birthday when he approached E.B., I.B., and their friends with a handgun concealed in his fanny pack. Appellant's age at the time of the confrontation is an " 'important consideration' " in the capacity determination. (See *Lewis*, *supra*, 26 Cal.4th at p. 378; see also *In re Marven C.* (1995) 33 Cal.App.4th 482, 487.)

Further, appellant's conduct during the confrontation betrays his understanding that it is wrong to brandish a firearm and threaten another person. According to witness testimony, appellant was "not on good terms" with E.B. During the confrontation, appellant sounded "mad" and tried to fight with E.B. as the two groups exchanged words. As substantiated by the surveillance footage, witnesses testified that appellant moved toward E.B., unzipped his fanny pack, reached into it, pulled his gun out partially, and racked its slide. Appellant said that he and his group were " 'bringing out the guns' " because E.B. and his group were messing with them.

According to the witnesses and surveillance footage, after I.B. knocked on the window of the apartment complex's office, appellant put his gun away and began

20

walking away from the confrontation. Soon after people came out of the office and said that the police had been called, appellant left the scene.

In arguing that the evidence showed appellant's capacity by clear and convincing evidence, the prosecutor emphasized the circumstances of the confrontation. Likewise, the juvenile court relied in large measure on those circumstances in concluding the prosecutor had proved appellant understood the wrongfulness of his conduct.

Appellant's age, his behavior during the confrontation, and his flight from the scene before the police arrived amount to clear and convincing proof that he appreciated the wrongfulness of the charged conduct at the time he committed it. Although the juvenile court considered Probation Officer Martinez's testimony in ruling on the capacity issue, that testimony did not feature prominently in the court's articulation of its determination. Under these circumstances, we conclude beyond a reasonable doubt that the admission of appellant's statements to Probation Officer Martinez was harmless to the juvenile court's determination of appellant's capacity. Similarly, no remand for further proceedings on the admissibility of appellant's statements is necessary because the admission of Martinez's testimony was harmless to the capacity determination.

Regarding appellant's claim of ineffective assistance of counsel, we conclude that appellant fails to show prejudice for any alleged deficient performance by defense counsel because appellant's capacity was proved by clear and convincing evidence even without considering Probation Officer Martinez's testimony.

Likewise, we are not persuaded by appellant's additional claim that even considering Probation Officer Martinez's testimony, insufficient evidence supports the juvenile court's capacity finding.[10] Viewing the evidence in the light most favorable to

---

[10] The California Supreme Court has explained that "when reviewing the sufficiency of the evidence for purposes of deciding whether retrial is permissible, the reviewing court must consider *all* of the evidence presented at trial, including evidence that should not have been admitted. '[W]here the evidence offered by the State and

the court's finding, appellant's age, the circumstances of his offenses, and his flight alone proved that he knew the wrongfulness of the charged conduct at the time of the confrontation.  Furthermore, Martinez's testimony regarding appellant's knowledge of the difference between right and wrong and the consequences for doing something wrong at home or school provides additional proof that appellant had the capacity required by Penal Code section 26.  Thus, we conclude that, with or without Martinez's testimony, there is substantial evidence from which a reasonable fact finder could have found it highly probable that appellant knew the wrongfulness of the charged conduct at the time of commission.  (See *O.B.*, *supra*, 9 Cal.5th at pp. 995–996.)

## III.  DISPOSITION

The judgment is affirmed.

admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial.' " (*People v. Story* (2009) 45 Cal.4th 1282, 1296–1297; see also *People v. Lara* (2017) 9 Cal.App.5th 296, 302, fn. 3.)

_____
                                 Danner, J.

WE CONCUR:

_____
Greenwood, P. J.

_____
Bromberg, J.

**H050952**
*People v. A.H.*